Fred C. Kramer Company, an Illinois Corporation, Plaintiff-Appellee, v. La Salle National Bank, a National Banking Corporation, as Trustee Under Trust Agreement Dated October 31, 1957, Known as Trust No. 20891, et al., La Salle National Bank, Defendant-Appellant.

Gen. No. 48,583.

First District, Second Division.

June 12, 1962.

Rehearing denied September 11, 1962.

Shaffer, Seelig, Mandel & Shapiro, of Chicago, for appellant.

Richard L. Furry, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

Plaintiff filed its complaint to foreclose a mechanic's lien against real estate held by defendant as trustee

under a land trust. Pursuant to a stipulation of facts the chancellor found that plaintiff was entitled to a mechanic's lien and entered a decree accordingly, from which defendant appeals.

By way of defense it is urged that the mechanic's lien claim is barred as a matter of law because defendant, as owner of the real estate, complying with all the provisions of the Mechanics' Lien Act (Ill Rev Stats 1961, c 82, §§ 1–39), as defendant argues, paid to the contractor the full amount of the contract price of the improvements before it had any knowledge of plaintiff's claim; and also that plaintiff, because of its failure to give timely notice of its claim to defendant, had no remedy under the statute.

The essential facts disclose that defendant, LaSalle National Bank, as trustee, holds legal title to real estate at 1610 South Cicero Avenue, Cicero, Illinois. Sam Shiner and Michael Reese were and still are equal owners of all the beneficial interest in this trust. About January 1, 1958 Shiner and Reese orally agreed to erect a motel on this property, and to assign to Reese the responsibility of supervising the construction and awarding the contracts. Accordingly, on February 1, 1958 Reese entered into a contract with Automatic Boiler Company, Inc., by which the latter agreed to install certain plumbing, heating, and air-conditioning equipment at an agreed price of $29,000. On March 17, 1958 Automatic Boiler in turn verbally agreed to buy certain of this equipment from plaintiff, Fred C. Kramer Company, at the prevailing market prices. This equipment was delivered to the motel site, was used in the construction of the motel, and constituted a permanent improvement. The first shipment from plaintiff to Automatic Boiler took place March 20, 1958 and was paid for by Automatic Boiler on April 11, 1958. Further shipments were made by plaintiff to Automatic Boiler in June 1958 and were paid for in full on June 27, 1958. In July 1958

408

further orders of Automatic Boiler for equipment were filled by plaintiff, totaling $4206.75; Automatic Boiler did not pay for these orders. The sum of $4206.75, which constitutes the amount of plaintiff's claim in this case, did not become due until August 31, 1958. Automatic Boiler subsequently went into bankruptcy.

It further appears that on April 7, and May 5, 1958 Reese on behalf of defendant paid to Automatic Boiler the sums of $7500 and $6972.44 for labor and materials supplied by Automatic Boiler to the motel. Each time Reese received a partial waiver of lien from Automatic Boiler but no sworn contractor's statement. On May 19, 1958 Reese submitted his own sworn contractor's statement to First Federal Savings and Loan Association of Maywood, the lending institution, listing Automatic Boiler as the contractor for heating and air-conditioning work in the amount of $29,000. On that same date Reese on behalf of defendant authorized First Federal to pay Automatic Boiler the sum of $10,000.00. At that time Automatic Boiler submitted its sworn contractor's statement to First Federal and waivers of lien.

On June 30, and July 17, 1958 further payments of $3000 and $1500, respectively, were made by First Federal at Reese's direction to Automatic Boiler. These payments, together with what had previously been paid to Automatic Boiler, left a balance due to it of $27.56 on its $29,000 contract with Reese. On both June 30, and July 17, 1958 Automatic Boiler delivered to First Federal waivers of lien and purported sworn contractor's affidavits which stated "all material taken from stock and paid for." These affidavits were in fact false and fraudulent, for on and prior to June 30, and July 17, 1958 Automatic Boiler had purchased equipment from plaintiff, which orders totaled $4206.75.

On August 26, 1958 plaintiff caused a notice of lien to be served on the trustee, and on the association,

409

individually and as agent for Reese. As of that date all money due from defendant to Automatic Boiler had been paid except $27.56. It was not until then that defendant, or its agent, Reese, or First Federal of Maywood, had any knowledge that the heating and air-conditioning equipment used by Automatic Boiler in its work at the motel was not taken from stock and paid for or that plaintiff had any claim against any of them.

The principal question presented is whether defendant's payments to the contractor were made in violation of the rights of plaintiff, a subcontractor under the act. Defendant relies on the following language of section 21 of the Mechanics' Lien Act:

"In no case, except as hereinafter provided, shall the owner be compelled to pay a greater sum for or on account of the completion of such house, building or other improvement than the price or sum stipulated in said original contract or agreement, *unless payment be made to the contractor or to his order, in violation of the rights and interests of the persons intended to be benefited by this act* . . . ." (Emphasis added.)

■ Defendant made its first payment to the contractor, in the amount of $7500, on April 7, 1958. In reciting this payment the agreed statement of facts reads:

". . . The said Michael Reese did not require of Automatic Boiler, nor did Automatic Boiler deliver to Michael Reese, before the making of such payment of $7,500.00 aforesaid, any statement in writing, under oath or verified by affidavit, of the names of all parties furnishing materials and labor to Automatic Boiler, and of the amounts due or to become due each. . . ."

Defendant made its second payment, in the amount of $6972.44, to the contractor on May 5, 1958. In describing this payment the agreed statement of facts uses the identical language, except for the amount and the date of the payment, that it used to describe the $7500 payment on April 7, 1958. These recitals constitute an admission on the part of defendant that it did not comply with section 5, which reads:

". . . It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect or superintendent, shall pay or cause to be paid to said contractor or to his order any moneys or other consideration, due or to become due such contractor, or make or cause to be made to such contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names of all parties furnishing materials and labor, and of the amounts due or to become due each. Merchants and dealers in materials only shall not be required to make statements herein provided for."

Section 32 provides:

". . . No payments to the contractor or to his order of any money or other considerations due or to become due to the contractor shall be regarded as rightfully made, as against the subcontractor, laborer, or party furnishing labor or materials, if made by the owner without exercising and enforcing the rights and powers conferred upon him in sections five (5) and twenty-two (22) of this act."

The recitals in the agreed statement of facts are further corroborated by statements in defendant's

411

brief wherein it admits that no sworn statements were received by it at the time of making the first and second payments.

 The third payment by defendant to the contractor in the amount of $10,000 was made May 19, 1958. At that time defendant received from the contractor the purported contractor's affidavit which is incorporated in the agreed statement of facts. An examination of this document discloses that it contains blank spaces for the information required under the statute. It is obvious that the document in question does not conform with the requirements of the act and cannot be regarded as a sufficient affidavit or sworn statement under section 5 of the statute. The fourth and fifth payments in the amounts of $3000 and $1500, respectively, were made June 30, and July 17, 1958. In each case the defendant required of and received from the contractor a document captioned "Contractor's Affidavit"; the affidavits are incorporated in the agreed statement of facts. An examination of these documents discloses that each contains, in the blanks provided for the information required by the statute, substantially the following statement: "All materials taken from stock and paid for." While the blank spaces in the document provide for inserting the name of the contractor, the kind of work, the amount of the contract, the amount paid to date, the balance due or to become due, the labor necessary to complete, and the total, the contractor supplied merely the unsupported statement already referred to. In the light of defendant's failure to require from the contractor written verified statements giving the names of all parties furnishing materials and labor and of the amounts due or to become due each, as specifically required by the statute, it is difficult to perceive the basis for defendant's argument that these incomplete statements "formally complied with Sec-

412

tion 5 of the Mechanic's Lien Law." No authority is cited for this contention.

■ It is well settled that when the owner of real estate makes payments to a contractor without receiving the statements required under section 5 of the act he does so at his peril. Liese v. Hentze, 326 Ill 633, 638, 158 NE 428 (1927); Barr & Collins v. Seiden, 3 Ill App2d 115, 120 NE2d 380 (1954); American Radiator Co. v. Blakie, 165 Ill App 404, 407–408 (1911). These cases approve the rule earlier announced in Nutriment Co. v. George Green Lumber Co., 94 Ill App 342, 343–345 (1901, reversed on grounds not here pertinent in 195 Ill 324, 63 NE 152 (1902)).

In Ceco Steel Products Corp. v. Couri, 311 Ill App 297, 35 NE2d 810 (1941), "the only question," said the court (p 298), "is whether the affidavit . . . is a sufficient compliance with the mechanic's lien statute, so as to bar the claim of the plaintiff for a lien." After quoting sections 5 and 32 in full, the court said (pp 300–301):

> "It will be noted that in section 5 it says that the statement in writing shall contain, 'The names of all parties furnishing materials and labor and the amount due to or become due each.' The pertinent part of the affidavit it will be noted states: 'affiant further says that the materials used for said Edward Couri belonged to us and were our exclusive property, no one having any interest or claim therein, and that all of the labor was paid by us.' This is not a compliance with the statute. . . . The affidavit is defective in not stating from whom Dornon and Fidler purchased the material, and whether it had been paid for."

■ Defendant argues that it should not be required to pay plaintiff or any other person a sum greater than the original contract price which it has

already paid to the contractor (less $27.56), and in support of its contention cites section 21 of the Mechanics' Lien Act. It will be noted that while this section provides that "in no case, except as hereinafter provided, shall the owner be compelled to pay a greater sum for or on account of the completion of such house, building or other improvement than the price or sum stipulated in said original contract or agreement," it also specifically states that this statutory protection will not be afforded if payment is made "to the contractor or to his order, in violation of the rights and interests of the persons intended to be benefited by this act . . ."

■ ■ The remaining question relates to plaintiff's alleged failure to give defendant notice of plaintiff's claim within the time required under section 24 of the Mechanics' Lien Act. The stipulated facts show that plaintiff's subcontract was completed on July 14, 1958, and that notice of plaintiff's claim was served upon the trustee, and upon the association, individually and as agent for Reese, on August 26, 1958, thus bringing plaintiff within the requirement that a subcontractor or party furnishing materials may at any time after making his contract with the contractor, "and shall within sixty (60) days after the completion thereof . . . cause a written notice of his claim and the amount due or to become due thereunder, to be personally served on the owner or his agent or architect, or the superintendent having charge of the building or improvement . . ." Defendant seeks to escape liability on the theory that service of notice comes too late if the owner has already paid substantially all sums due the contractor; in effect, attempts to read section 21 out of context and to ignore section 5 of the statute. The law is that an owner of premises who makes payments to the original contractor without securing from him the verified

414

statement of the parties furnishing labor and materials as required by section 5 is not relieved from liability to a subcontractor, even though the payments were made before the latter served the notice provided for in the act. Larsen v. Basikowski, 206 Ill App 1 (Abst 1917).

For the reasons indicated, we hold that the chancellor properly entered the decree finding that plaintiff has a valid and subsisting mechanic's lien upon the premises involved, and the decree is therefore affirmed.

Decree affirmed.

BRYANT and BURKE, JJ., concur.