DIANNE L. MEYER *et al.*, Petitioners-Appellants, v. FIRST AMERICAN TITLE INSURANCE AGENCY OF MOHAVE, INC., Respondent-Appellee.

Second District   No. 2—96—0381

Opinion filed December 19, 1996.

J. Robert Meyer, of Hinsdale, and Robert G. Black, of Naperville, for appellants.

Peter H. Jagel, of Knuckles & Jagel, of Naperville, for appellee.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

The petitioners, Dianne Meyer and the Spaudie Family Trust, by Bernice Spaudie, trustee, are Illinois residents and appeal from the

entry of an order by the circuit court, upon motion of the respondent, First American Title Insurance Agency of Mohave, Inc. (First American), which found satisfaction of their registered Illinois judgment. 735 ILCS 5/12—652 (West 1994). We reverse and remand.

The procedural posture of this case is unique in Illinois. On February 27, 1990, in Arizona case number CV 88—07376 (Arizona 1988 judgment), the respondent had a judgment entered against it, in the amount of $688,991.01, with post-judgment interest set at 10%, in favor of Fairfax Industries, Inc. (Fairfax). The respondent appealed, and the Arizona Court of Appeals affirmed the judgment, also entering an additional award of $8,200 in attorney fees against the respondent. Subsequently, the Arizona Supreme Court, on June 29, 1993, denied the respondent's request for further review of the Arizona 1988 judgment and ordered the respondent to pay additional costs of $250 and additional attorney fees totalling $2,500.

On July 1, 1989, Fairfax was dissolved under Illinois law. The petitioners in the case at bar allege that, as of that date, the beneficial rights to 50% of all of the outstanding shares of common stock in Fairfax were held by petitioner Meyer and the remaining 50% was held by petitioner the Spaudie Family Trust.

On October 25, 1992, a separate action was filed in Arizona, with an Arizona case number of CV 92—92186 (Arizona 1992 action), for a declaration of rights with respect to claims formerly belonging to Fairfax. Apparently, the Arizona 1992 action was instigated because a third-party judgment creditor of Fairfax wished to satisfy its own judgment from the award that Fairfax was to receive from First American. *Fairfax was neither named nor joined as a party in the Arizona 1992 action.* On February 12, 1993, as part of the Arizona 1992 action, John Robert Meyer, attorney for petitioner Dianne Meyer, signed and filed an affidavit in which he stated, "from and after December 30, 1988, the Hamilton Trust and the Oradell Trust were each the owners of an undivided one-half interest in the Fairfax Cause of Action. The Trusts presently remain the owners and holders of all rights and interests in the Fairfax Cause of Action." At oral argument before this court, counsel for the petitioners indicated that, at the time John Robert Meyer made this statement, he reasonably believed it to be true.

In October 1994, First American interpleaded in the Arizona 1992 action. First American did not name Dianne Meyer or the Spaudie Family Trust as a party to the interpleader.

On November 4, 1994, the court in the Arizona 1992 action ordered that, upon payment of $1,032,792.18 to the clerk of the court, First American would be dismissed from the Arizona 1992 action. Ac-

cording to counsel for the petitioners when appearing for oral argument in this appeal, the Arizona court found that insufficient consideration was provided by the Hamilton Trust and the Oradell Trust to support the alleged "spinoff" from Fairfax to those trusts. Further, the court ordered that First American "be forever released and discharged from any and all liability to all parties to this action." The order also purported to adjudge "that the Fairfax Judgment is and has been satisfied in full."

On May 26, 1995, petitioner Dianne Meyer instituted the present action by filing a verified petition in the circuit court of Du Page County, Illinois, to enforce the Arizona 1988 judgment. On June 15, 1995, the trial court granted the motion of the Spaudie Family Trust for leave to intervene *nunc pro tunc* in the Meyer petition, and the Spaudie Family Trust filed a similar petition. The petitions related that a transfer of stock in Fairfax occurred, with Dianne Meyer and the Spaudie Family Trust as recipients, and that Fairfax was dissolved as of July 1, 1989. Therefore, the petitions concluded that 50% of the right, title, and interest in the judgment against First American belonged to Dianne Meyer, while the other 50% belonged to the Spaudie Family Trust.

In addition, the petitions alleged that, in October 1994, "which was more than five years after Fairfax' dissolution on July 1, 1989, First American filed an attempted, but incomplete and ineffective, interpleader action" in the Arizona 1992 action. According to the petitions, the court in the Arizona 1992 action could not properly entertain jurisdiction over Fairfax, due to the fact that the Illinois Business Corporation Act of 1983 provides that no action will lie against an Illinois corporation dissolved for more than five years. 805 ILCS 5/12.80 (West 1994). Further, the petitions set forth that First American did not attempt to serve the Illinois Secretary of State on behalf of Fairfax as a dissolved corporation (see 805 ILCS 5/5.05, 5.25 (West 1994)), nor did First American name Fairfax's alleged successors in interest, Dianne Meyer or the Spaudie Family Trust, in the Arizona 1992 action.

As a result of these petitions, the Arizona 1988 judgment was registered in Illinois.

On July 14, 1995, or more than 30 days after the registration of the Arizona 1988 judgment in Illinois, First American first entered its general appearance. On that date, First American moved to strike the May 26, 1995, registration of the Arizona 1988 judgment, asserting that the Arizona 1988 judgment had been fully satisfied, as determined by outcome of the Arizona 1992 action. First American later amended its motion, but still maintained that the registration

in Illinois could not stand because of the result of the Arizona 1992 action.

On September 6, 1995, the trial court denied First American's amended motion to vacate the registration. First American moved for reconsideration of that order. On November 15, 1995, the trial court denied the motion for reconsideration. In making its ruling, the trial court stated that First American "must procure something in an Arizona court that is traditionally recognized as a release or a satisfaction and present it to this court." The trial court recommended that First American return to the court that issued the Arizona 1988 judgment to accomplish this purpose. "Do that and I'll honor it," the trial court admonished.

On December 4, 1995, First American moved for an emergency order of satisfaction, pursuant to section 12—183 of the Code of Civil Procedure (Code) (735 ILCS 5/12—183 (West 1994)). That motion asserted additional orders in Arizona entered on November 17, 1995, and November 18, 1995.

On December 15, 1995, First American filed a notice of appeal from the November 15, 1995, order denying its motion for reconsideration and to vacate.

During the time granted for briefing on First American's December 4, 1995, motion, First American then set out another Arizona order, this one entered on December 21, 1995. In that order, the Arizona court that entered the judgment in the Arizona 1988 judgment found First American's liability "specifically satisfied in full as to any and all claims by Dianne L. Meyer and the Spaudie Family Trust, *** as set forth in Cause No. 95 MR 0349 filed in the Circuit Court of the Eighteenth Judicial Circuit, Du Page County, Illinois, or otherwise." First American's motion to procure that December 21, 1995, order expressly premised such a finding on the judgment entered on November 4, 1994, in the Arizona 1992 action (the interpleader which was *ex parte* as to the petitioners herein). The Arizona order dated December 21, 1995, did not recite any payment of the Arizona 1988 judgment to the petitioners and did not recite any releases executed by the petitioners.

In response, Dianne Meyer and the Spaudie Family Trust each filed affidavits which stated: they have never received any payments whatsoever from First American on the Arizona 1988 judgment; they have never released First American from any judgment in any action; they have never filed an appearance, or authorized anyone to appear on their behalf, in any proceeding in Arizona; they never received any summons or service of any kind in either the Arizona

1988 judgment or the Arizona 1992 action; and they were never personally served with any notice of any motion to obtain the December 21, 1995, order of satisfaction in the Arizona 1988 judgment. *There is nothing in the record of the instant case to controvert these allegations of fact.* Thus, the Arizona proceedings were *prima facie ex parte* as regards the petitioners. See *Bank of Ravenswood v. Domino's Pizza, Inc.*, 269 Ill. App. 3d 714, 720 (1995). The petitioners also moved to strike the filing of the Arizona December 21, 1995, order.

On February 27, 1996, the petitioners filed a motion, later denied, with the Arizona court to vacate the Arizona court's December 21, 1995, order.

On February 28, 1996, the circuit court of Du Page County entered an order granting First American's motion for an order of satisfaction and denying the petitioners' motions to strike the filing of the Arizona December 21, 1995, order. Specifically, the court ordered, "In accordance with the Code of Civil Procedure, the judgment heretofore entered by the court in the above entitled matter is hereby vacated and held for naught." The petitioners now appeal the circuit court of Du Page County's February 28, 1996, order in our court.

On March 21, 1996, this court granted First American's motion to dismiss voluntarily, with prejudice, its appeal stemming from the circuit court's November 15, 1995, order.

■ Section 12—652 of our Code provides that, once a foreign judgment has been filed, it "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying" as any other judgment of a circuit court. 735 ILCS 5/12—652 (West 1994). In Illinois, a collateral attack may be had on a foreign judgment based upon the defenses of fraud in the procurement of the judgment or the lack of jurisdiction in the foreign court. *Practice Management Associates, Inc. v. Thurston*, 225 Ill. App. 3d 470, 474 (1992). Further, other courts, interpreting the Uniform Enforcement of Foreign Judgments Act (Uniform Act) (735 ILCS 5/12—650 *et seq.* (West 1994)), have held that "*satisfaction*, lack of due process, or other grounds that make the judgment invalid or unenforceable" (emphasis added) may constitute valid grounds for vacating a judgment that stemmed from the registration of a foreign judgment. *Welltech, Inc. v. Abadie*, 666 So. 2d 1234, 1236 (La. App. 1996); *Wooster v. Wooster*, 399 N.W.2d 330, 333 (S.D. 1987); *Matson v. Matson*, 333 N.W.2d 862, 867 (Minn. 1983).

■ Section 12—183(h) of our Code states, "Upon the filing of a release or satisfaction in full satisfaction of judgment, signed by the

party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the action." 735 ILCS 5/12—183(h) (West 1994). The Appellate Court, First District, has held that this section does not bar the judgment creditor's right to appeal following payment of that judgment. *Herron v. Anderson*, 254 Ill. App. 3d 365, 371-72 (1993); see also *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 110 (1990). While the instant case differs slightly in that the petitioners, the alleged judgment creditors, were not the recipients of the payment allegedly made by First American, we see no reason to deny the petitioners the right to appeal the trial court's granting of the respondent's section 12—183 motion (735 ILCS 5/12—183 (West 1994)).

■ Neither *Herron*, 254 Ill. App. 3d 365, *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, nor the parties in the present case make mention of what our burden of review should be with regard to orders granted under section 12—183 (735 ILCS 5/12—183 (West 1994)). Our review of Illinois law reveals that no other court has had occasion to determine the proper standard of review for orders entered pursuant to section 12—183 (735 ILCS 5/12—183 (West 1994)). When a valid order of release or satisfaction of judgment is entered, an obligor is relieved of his duty to further satisfy the judgment. Thus, we determine that orders entered pursuant to section 12—183, dealing with the "[r]elease of judgment" (735 ILCS 5/12—183 (West 1994)), should be reviewed on appeal under the same standard of review as orders entered pursuant to section 2—1401 of the Code, dealing with "[r]elief from judgments" (735 ILCS 5/2—1401 (West 1994)). Consequently, a reviewing court should only interfere with a trial court's decision on whether a release or satisfaction of judgment has been properly proved where it is shown that the trial court abused its discretion. 735 ILCS 5/12—183 (West 1994); see also *Kaput v. Hoey*, 124 Ill. 2d 370, 378 (1988); *Smith v. Cole*, 256 Ill. App. 3d 806, 809 (1993) (abuse of discretion is proper standard of review for petitions for relief from judgment brought under section 2—1401 of the Code).

■ Turning to the merits, we determine that the circuit court erred for three reasons. First, the December 21, 1995, Arizona order should not have directly affected the Illinois registered judgment. Second, because the Arizona orders were entered *ex parte* as to the petitioners, they may be collaterally attacked in the circuit court. Third, First American did not sufficiently establish that "payment to the proper parties" was made in accordance with section 12—183 (735 ILCS 5/12—183 (West 1994)).

First, the circuit court erred by not recognizing that the

December 21, 1995, order did not directly affect the Illinois registered judgment. Once the Arizona 1988 judgment was registered in Illinois, an Illinois judgment with a legally independent life of its own was formed. *Light v. Light*, 12 Ill. 2d 502, 508-09 (1957); 735 ILCS 5/12—652 (West 1994). In *Light*, the plaintiff registered a Missouri judgment in Illinois. After the judgment was registered, the judgment debtor claimed that the foreign judgment had become satisfied and uncollectible by law in Missouri. After analyzing Missouri law, the Illinois Supreme Court disagreed with the defendant, but also held that the uncollectibility of the Missouri judgment had no effect on the collection of the Illinois registered judgment. *Light*, 12 Ill. 2d at 508-09. The court held that "unless the registration is set aside *after a hearing* [in Illinois], it is the registered judgment that becomes the final judgment of the Illinois court." (Emphasis added.) *Light*, 12 Ill. 2d at 508.

The Illinois statutes pertaining to the registration of foreign judgments are an enactment of the Uniform Act (735 ILCS 5/12—650 *et seq.* (West 1994)). The purpose of the Uniform Act is to implement the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) and to facilitate interstate enforcement of judgments in any jurisdiction where the judgment debtor is found. *Practice Management Associates, Inc.*, 225 Ill. App. 3d at 473. By statute, the Uniform Act is to be interpreted and construed to effectuate these purposes, as well as to make uniform the law of the states that enact it. 735 ILCS 5/12—657 (West 1994).

Thus, we examine a case similar to *Light*, which arose under Connecticut law. In *Burchett v. Roncari*, 181 Conn. 125, 434 A.2d 941 (1980), a judgment creditor sought the enforcement of a Kentucky judgment that it had registered in Connecticut. After registration in Connecticut, the Kentucky judgment was nullified by post-judgment action taken in the Kentucky court. The defendant claimed that the Connecticut registered judgment, in turn, was nullified by the post-judgment action taken by the Kentucky court. In ruling that the post-judgment action of the Kentucky court had no effect on the Connecticut registered judgment, the Connecticut Supreme Court stated, "The Connecticut judgment *** had its own independent life-support system. *A domestic judgment enforcing a foreign judgment is not directly affected by subsequent proceedings in the originating state.*" (Emphasis added.) *Burchett*, 181 Conn. at 129, 434 A.2d at 943; see also *Huntington National Bank v. Sproul*, 116 N.M. 254, 861 P.2d 935 (1993) (once an Ohio judgment was registered in New Mexico, the judgment was converted into a New Mexico judgment).

Second, because the record in the instant case reveals that the

subsequent proceedings in Arizona, as well as the original proceedings in Arizona, were *ex parte* as to the petitioners, the trial court erred in not allowing the petitioners the right to attack those orders collaterally. A judgment rendered by a court that "fails to acquire jurisdiction of either the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally." *State Bank v. Thill*, 113 Ill. 2d 294, 309 (1986); see also *Dec v. Manning*, 248 Ill. App. 3d 341, 347 (1993). Thus, aside from the fact that the Arizona December 21, 1995, order has no direct effect on the independent Illinois judgment, that order was also issued *ex parte* as to the petitioners and, consequently, may be attacked collaterally by the petitioners in this case.

Third, we determine that the circuit court erred in ordering the petitioners' case dismissed due to a satisfaction of judgment because First American did not sufficiently establish that a satisfaction had been entered under section 12—183 (735 ILCS 5/12—183 (West 1994)). Section 12—183(h) provides, "Upon the filing of a release or satisfaction in full satisfaction of judgment, signed by the party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the action." 735 ILCS 5/12—183(h) (West 1994). The record reveals that First American did not file a satisfaction signed by the party in whose favor the judgment was entered. Also, the record shows that the circuit court relied exclusively on the December 21, 1995, order of the Arizona court, and not any such signed satisfaction, when it granted First American's motion. Thus, because the clear terms of the statute were not met, we have the authority to reverse the trial court's decision.

However, we note that the present case illustrates an inherent problem with the language of section 12—183 (735 ILCS 5/12—183 (West 1994)). Where the original judgment creditor's rights to collect on a judgment have accrued to a different party, who then becomes the judgment creditor, and the judgment debtor then satisfies the judgment with that different party, the terms of section 12—183 may be difficult to meet. Section 12—183 requires a "release or satisfaction *** signed by the party in whose favor the judgment was entered." 735 ILCS 5/12—183(h) (West 1994). Technically, the party that assumes or acquires the right to be judgment creditor could never have a valid satisfaction order entered against it, even where it had signed a satisfaction document, because it was not the party "in whose favor the judgment was entered." 735 ILCS 5/12—183(h) (West 1994). When construing a statute, a court must ascertain and give effect to the legislature's intent, the best indicator of which is the language of the statute itself. *First of America Bank v. Netsch*,

166 Ill. 2d 165, 181 (1995); *Moon v. Smith*, 276 Ill. App. 3d 958 (1995). However, because section 12—183 does not contemplate a situation where the right to be the judgment creditor has been transferred to another party, we find it ambiguous in such a context.

This court has previously determined that the purpose of section 12—183 is, in relevant part, to ensure that proof of payment of the judgment to the proper parties has been made, thus barring any further attempt by the judgment creditor to enforce the judgment. *Heller v. Travel America, Inc.*, 229 Ill. App. 3d 439, 444 (1992), quoting *In re Marriage of Pitulla*, 202 Ill. App. 3d at 110. That being so, we determine that, when dealing in the context of a party assuming or acquiring the right to be the judgment creditor from the original judgment creditor, a circuit court shall grant a motion pursuant to section 12—183 (735 ILCS 5/12—183 (West 1994)) upon sufficient proofs that "payment to the proper parties has been made." This construction avoids an otherwise absurd result. See *People v. Coleman*, 166 Ill. 2d 247, 253 (1995) (a court interpreting a statute must assume that our legislature did not intend an absurd result).

We determine that the circuit court erred in ruling that First American had sufficiently proved that "payment to the proper parties" was made. First American filed the Arizona court's December 21, 1995, order with the circuit court, and the circuit court relied exclusively upon that order when granting First American's section 12—183 motion. Mindful of the proposition that "[a] domestic judgment enforcing a foreign judgment is not directly affected by subsequent proceedings in the originating state" (*Burchett*, 181 Conn. at 130, 434 A.2d at 943), we determine that the mere order of one of our sister states, by itself, does not constitute such sufficient proof. This is especially so where, as here, the order was entered *ex parte* as to the petitioners.

We also determine that, while the circuit court erred in dismissing the petitioners' registered judgment, equity demands that we remand this case for an evidentiary hearing. Our supreme court has envisioned and authorized such a hearing. *Light*, 12 Ill. 2d at 508 (the registration of a foreign judgment may be set aside "*after a hearing*" (emphasis added)).

Upon remand, the trial court should be aware that our supreme court held, under the Uniform Act, that, if there is a defense that bars the foreign judgment completely, then final judgment on the Illinois registered judgment must be for the party alleged to be the judgment debtor. *Light*, 12 Ill. 2d at 514. Satisfaction would be such a defense. 735 ILCS 5/12—652, 12—183 (West 1994); *Welltech, Inc.*, 666 So. 2d at 1236; *Wooster*, 399 N.W.2d at 333; *Matson*, 333 N.W.2d at 867.

■ Turning briefly to other issues, we determine that the petitioners' argument that the respondent has waived its right to raise the defense of satisfaction by not raising it in pleadings within 30 days lacks merit. In Illinois, the defense of payment and satisfaction may be raised by a defendant at any time. *Klier v. Siegel*, 200 Ill. App. 3d 121, 125-27 (1990).

■ In addition, we determine that the respondent was not barred by *res judicata* from making its section 12—183 motion to dismiss, based upon the Arizona court's December 21, 1995, order. While the respondent had, indeed, made similar motions under the same statute, none of them relied upon the December 21, 1995, order of the Arizona court. Instead, they relied upon the outcome and orders of the Arizona 1992 action. Further, the respondent dropped its appeal of the denial of its previous motions only after the trial court dismissed the petitioners' registered judgment. The petitioners cite no case law for the proposition that *res judicata* applies in such an instance.

■ In closing, we note that the respondent alleges in its brief that the reversal of the trial court's satisfaction order would make Illinois a state in which:

"[A]nyone could claim to be successors in interest of a foreign judgment and, even though the original judgment holder had been satisfied, they would still be entitled to a second payment of the judgment and any subsequent 'successors in interest' would then be entitled to third, fourth, and fifth payments of the same judgment."

The respondent's statement starts from a false premise, that is, that "the original judgment holder had been satisfied." Fairfax, the original judgment holder, did not satisfy its judgment against First American before dissolution. At the crux of this case is whether the petitioners are the proper successors in interest of the Fairfax judgment. Payment to a third party not in privity with the original judgment holder does not protect the judgment creditor from paying the judgment to a proper successor in interest. See 49 C.J.S. *Judgments* § 523, at 975 (1947).

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded in accordance with this opinion.

Reversed and remanded.

BOWMAN and THOMAS, JJ., concur.