BRICKS, INC., Plaintiff-Appellant, v. C AND F DEVELOPERS, INC., *et al.*, Defendants-Appellees (G and B Construction, Inc., *et al.*, Defendants).

First District (4th Division)   No. 1—04—3222

Opinion filed September 22, 2005.

Dennis G. Taheny, Ltd., of South Barrington (Dennis G. Taheny, of counsel), for appellant.

Weinberg Richmond, L.L.P., of Chicago (Lawrence M. Karlin, of counsel), for appellees.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Bricks, Inc. (Bricks), a supplier of building materials and supplies, brought this action against defendants G&B Construction, Inc. (G&B), C&F Developers, Inc. (C&F), Cole Taylor Bank, and Julian Borcyk to establish and enforce a lien pursuant to the Mechanics Lien Act (770 ILCS 60/1 *et seq.* (West 2002)), and to recover money judgments against defendants. Cole Taylor Bank, as trustee, is the owner of the premises where the construction work was done. C&F was the general contractor for the project. G&B was a masonry subcontractor that hired Bricks as its secondary subcontractor.

The trial court entered an order granting Cole Taylor Bank and C&F's motion for partial summary judgment, finding that Bricks' lien was limited to $10,000. On appeal, Bricks argues that the court erred in so limiting the amount of its lien. For the following reasons, we affirm.

## BACKGROUND

G&B purchased the bricks from Bricks between October and December 2001. Bricks completed delivery of all of the bricks, valued at $64,510.22, by December 11, 2001, but defendant G&B failed to pay Bricks. In accordance with section 5 of the Mechanics Lien Act (770 ILCS 60/5 (West 2000)), C&F, as the general contractor, deposited sworn statements with Cole Taylor Bank on November 1, 2001, and December 6, 2001, detailing the total contract price and identifying various subcontractors on the construction project. These statements identified G&B as a masonry subcontractor, but did not identify Bricks as a supplier to G&B. Waivers of liens, deposited by G&B on November 8, 2001, and December 13, 2001, also failed to identify G&B's supply contract with Bricks or show that G&B was indebted to Bricks for materials supplied by Bricks. As of December 13, 2001, $260,000 of the $270,000 due on the masonry subcontract to G&B had been paid, leaving $10,000 remaining due on the contract.

Plaintiff Bricks served its notice and claim for mechanics lien on Cole Taylor Bank, C&F, and G&B on February 26, 2002, and recorded the mechanics lien with the clerk of the Cook County recorder on March 12, 2002. Thereafter, Cole Taylor Bank and C&F moved the court for partial summary judgment on the issue of liability, seeking an order that their liability to Bricks was limited to $10,000, the unpaid balance owed to G&B as of the date of their notice of Bricks' lien.

On June 11, 2004, the trial court entered an order granting the motion for partial summary judgment, finding that Bricks' lien was limited to the $10,000 that remained due to G&B as shown on the sworn statements of the general contractor, C&F. Following a bench trial with a stipulated set of facts, the trial court ruled that Bricks be paid $10,000 plus interest.[1]

On October 15, 2004, prior to Bricks' filing of its notice of appeal, Cole Taylor Bank, through its insurer, paid Bricks $12,734.93, representing the principal amount of the mechanics' lien together with statutory interest through the date of payment. Bricks accepted the payment and, through its counsel, executed a release and satisfaction of judgment on October 14, 2004, which in pertinent part, provided:

> "Bricks, Inc., the judgment creditor *** having received full satisfaction, and payment, releases the judgment entered on September 20, 2004, against defendants C&F Developers, Inc. and Cole Taylor Bank *** for $10,000.00 and interest from and after February 26, 2002."

Bricks' release was filed with the Cook County recorder of deeds on November 24, 2004. On January 13, 2005, the trial court entered an order stating that Bricks' lien was "hereby released and of no further force or effect."

## ANALYSIS

Initially, we must address defendants Cole Taylor Bank and C&F's motion to dismiss Bricks' appeal as moot. Defendants argue that their payment to Bricks of the money judgment below ($12,734.93 representing the $10,000 balance plus interest), and Bricks' acceptance of that payment via the release and satisfaction of judgment signed by Bricks, rendered moot Bricks' argument on appeal that the circuit court erred in limiting its mechanics' lien to the unpaid balance owed to G&B,

---

[1]At some point either before or during the proceedings on Brick's complaint, defendants G&B and Julian Borcyk filed for bankruptcy, and, on October 29, 2003, the trial court entered an order excusing both parties' appearance. Neither was party to the trial court's order limiting the amount of Brick's lien or this appeal.

Bricks' immediate contractor, as of the date Bricks served notice of its claim for the lien. Thus, we must first determine whether this appeal should be dismissed as moot.

## I. MOOTNESS

Defendants contend that Bricks waived its right to appeal the trial court's judgment by the terms of the judgment itself and its receipt and acceptance of full payment of the adjudicated amount of its lien. We disagree.

■ Section 12—183(h) of the Code of Civil Procedure provides in pertinent part: "[u]pon the filing of a release or satisfaction in full satisfaction of judgment, signed by the party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the action." 735 ILCS 5/12—183(h) (West 2002). We have found, however, that section 12—183 does not preclude the judgment creditor's right to an appeal. See *Meyer v. First American Title Insurance Agency of Mohave, Inc.*, 285 Ill. App. 3d 330, 335-37 (1996); *Herron v. Anderson*, 254 Ill. App. 3d 365, 371-72 (1993); *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 109-10 (1990).

The purpose of section 12—183 is to serve as proof of the payment of the judgment, barring any further attempts by the judgment creditor to enforce the judgment, and to stop the accrual of postjudgment interest. *Herron*, 254 Ill. App. 3d at 372. Once a satisfaction of judgment has been filed with the trial court, the statute places a limitation on the trial court's jurisdiction to conduct further proceedings on the issue, but it does not bar an appeal. *Herron*, 254 Ill. App. 3d at 372.

As we have stated, "[i]t would be unfair for the legislature to, in the first place, compel the entry of a satisfaction and then, as a result of the compelled satisfaction, deny the right to appeal." *In re Marriage of Pitulla*, 202 Ill. App. 3d at 110. To avoid this result, we have interpreted section 12—183 so that a judgment debtor cannot "compel the entry of the satisfaction [as defendants did here] and foreclose the judgment creditor's right to appeal." *In re Application of the County Treasurer & ex officio County Collector*, 351 Ill. App. 3d 244, 250 (2004), citing *Pitulla*, 202 Ill. App. 3d at 110. Thus, Bricks' signing of the release and satisfaction did not render the present appeal moot.

■ Moreover, Rule 305(b) offers no support to defendants' mootness argument. Rule 305(b) states in pertinent part:

"[T]he court may stay the enforcement of any judgment, or the enforcement, force and effect of interlocutory orders or any other judicial or administrative order. The stay shall be conditioned upon such terms as are just. A bond may be required in any case, and

shall be required in money judgments or to protect an appellee's interest in property." 155 Ill. 2d R. 305(b).[2]

Highlighting the last sentence of Rule 305(b), defendants argue that "[i]f Bricks intended to preserve its interest in the real estate pending appeal, it was required to post bond."

Requiring a bond "serves as a means to give the judgment creditor security during the pendency of the appeal. It ensures that if the judgment is affirmed, the judgment creditor will be paid that which is owed." *Price v. Philip Morris, Inc.*, 341 Ill. App. 3d 941, 943 (2003), citing *Ennor v. Galena & Southern Wisconsin R.R. Co.*, 104 Ill. 103, 104 (1882). Because Bricks is both the appellant and the judgment creditor of the money judgment entered by the trial court below, the purpose behind the requirement of a bond in cases where a money judgment was entered in favor of the judgment creditor (*i.e.*, to ensure that the judgment creditor is paid) does not apply here. What would defendants have Bricks post as a bond? The amount Bricks sought in the circuit court below?

■ Normally, it is the judgment debtor, such as defendants, that must post a bond in order to protect the money judgment awarded to the judgment creditor in the proceedings below. Here, even though Bricks was awarded a money judgment, it, and not defendants, sought an appeal. Defendants have cited no case where a judgment creditor was required to post a bond under Rule 305 before filing an appeal.

Therefore, we find that Bricks was not required to post a bond under Rule 305 as a prerequisite to its filing an appeal. Based upon our interpretation of section 12—183, and the absurd result that would inure from applying defendants' reading of Rule 305(b) to Bricks, we also find that Bricks' appeal is not moot and deny defendants' motion to dismiss the appeal.

## II. LIMITATION OF LIEN

We next address Bricks' argument on appeal that the trial court

---

[2]Section (a) of Rule 305 is devoted to stays of enforcement of money judgments; section (b) deals with stays of enforcement in cases involving both non-money and money judgments. See *Price v. Philip Morris, Inc.*, 341 Ill. App. 3d 941, 946 (2003), citing 155 Ill. 2d Rs. 305(a), (b). However, "the bond requirement applicable to money judgments [in section (a)] is expressly retained in mandatory language [in section (b)]." *Price*, 341 Ill. App. 3d at 946. This mandatory language is irrelevant here, however, as defendants do not argue that the failure of Bricks to post a bond divests this court of subject matter jurisdiction over Bricks' appeal. Instead, as noted below, defendants argue Bricks' failure to post bond evidenced an intent not to preserve its interest in the rest of the money Bricks claims it is entitled to.

erred in granting defendants Cole Taylor Bank and C&F's motion for partial summary judgment limiting Bricks' recovery to $10,000 on its mechanics lien. In support of its argument, Bricks points to its compliance with section 24 of the Mechanics Lien Act (hereinafter the Act), which states, in relevant part:

> "Sub-contractors, or party furnishing labor or materials, may at any time after making his or her contract with the contractor, and shall within 90 days after the completion thereof, or, if extra additional work or material is delivered thereafter, within 90 days after the date of completion of such extra or additional work or final delivery of such extra or additional material, cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent by registered or certified mail, with return receipt requested, and delivery limited to addressees only ***." 770 ILCS 60/24 (West 2002).

■ The Act attempts to balance the rights and duties of owners, subcontractors, and materialmen. *Struebing Construction Co. v. Golub-Lake Shore Place Corp.*, 281 Ill. App. 3d 689, 694 (1996). Thus, one purpose of the Act is to allow materialmen like Bricks to protect their interests by obtaining a lien upon premises where a benefit has been received by the owner and the value or condition of the property has been increased or improved by the furnishing of labor and materials. See *Northwest Millwork Co. v. Komperda*, 338 Ill. App. 3d 997, 1000 (2003). Because the rights under the Act are in derogation of the common law, the steps necessary to invoke those rights must be strictly construed. *Northwest Millwork*, 338 Ill. App. 3d at 1000.

In the instant action, Bricks satisfied the notice requirements of section 24 of the Act by causing its notice and claim for a lien to be served on Cole Taylor Bank and C&F within 90 days after completion of its work under the contract with G&B. See 770 ILCS 60/24 (West 2002). However, in addition to protecting the rights of those furnishing labor and materials, the Act also seeks to protect owners from the potential claims of subcontractors.

Many cases have found that a secondary subcontractor seeking to enforce his mechanics' lien, even if in compliance with the notice requirements of section 24 of the Act, is limited to recovering only that amount which is owed to his immediate contractor at the time the notice of his lien is given. See *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 656 (1995); *Contractors' Ready-Mix, Inc. v. Earl Given Construction Co.*, 242 Ill. App. 3d 448, 455-57 (1993); *Decatur Housing Authority v. Christy-Foltz, Inc.*, 117 Ill. App. 3d 1077, 1081 (1983); *Luczak Brothers, Inc. v. Generes*, 116 Ill. App. 3d 286, 302-03 (1983); *Koenig v. McCarthy Construction Co.*, 344 Ill. App. 93, 104 (1951).

■ Moreover, section 5 of the Act provides in pertinent part:

"It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing materials and labor and of the amounts due or to become due to each." 770 ILCS 60/5 (West 2002).

Section 5 of the Act requires contractors to provide information to the owner that is within their knowledge but that may not be known to the owner. *Northwest Millwork*, 338 Ill. App. 3d at 1001. The purpose of requiring these sworn statements from contractors is to protect owners from the potential claims of unknown subcontractors. See *Malesa v. Royal Harbour Management Corp.*, 187 Ill. App. 3d 655, 659 (1989); see also 770 ILCS 60/27 (West 2002) (stating that an owner is protected against subcontractors not listed or amounts understated on the sworn written statement unless those omissions are with the knowledge or collusion of the owner); *Sanaghan v. Lawndale National Bank*, 90 Ill. App. 2d 254, 263 (1967) (stating that in the absence of "timely independent notice, laborers and materialmen must bear the risk of loss from false statements made by contractors and subcontractors"). Moreover, an owner is entitled to rely upon a contractor's affidavit in making payments and is protected as against unidentified subcontractors so long as he has no knowledge or notice that the affidavit contains false or incomplete information. See *Alliance Steel, Inc. v. Piercy*, 277 Ill. App. 3d 632, 635-36 (1996); *Luczak Brothers*, 116 Ill. App. 3d at 302; but see *McCann Construction Specialties Co. v. Alan Construction Co.*, 12 Ill. App. 3d 206, 208-09 (1973) (finding that materialman could recover full amount owed even though materialman was not listed in subcontractor's affidavit).

■ In the present case, Bricks properly served notice of its secondary subcontractor's lien on Cole Taylor Bank, C&F, and G&B on February 26, 2002, within the 90-day window as required by section 24. See 770 ILCS 60/24 (West 2002). However, Cole Taylor Bank received notice of Bricks' lien only after paying all but $10,000 to G&B (Bricks' immediate contractor), and Bricks presented no evidence showing that Cole Taylor Bank or C&F knew of the existence of Bricks as a subcontractor prior to that payment, the omission of Bricks from G&B's sworn statements was with the knowledge or collusion of Cole Taylor Bank, or that any payments were wrongfully made by Cole Taylor Bank after receiving notice from Bricks of its lien.

Even though Bricks served its notice upon Cole Taylor Bank and C&F within the 90 days prescribed by section 24 of the Act, this court has held that Cole Taylor Bank, as owner, can rely on sworn statements from its contractor. See *Season Comfort*, 281 Ill. App. 3d at 656 (stating that a secondary subcontractor, even if in compliance with the notice requirements of section 24 of the Act, is limited in the assertion of liens to the amounts due to its immediate contractor at the time the notice of lien is given); see also *Decatur Housing Authority*, 117 Ill. App. 3d at 1081; *Koenig*, 344 Ill. App. at 104. Thus, we find that the trial court properly limited Bricks' recovery to the unpaid amount due to Bricks' immediate contractor as of the date Bricks served notice of its lien.

We empathize with Bricks' plight. We recognize that in the instant case, Bricks filed its notice in compliance with the provisions of section 24 of the Act and yet, despite this compliance, its recovery was limited to less than the full amount of the materials it provided. Though this result seems contrary to one of the Act's goals of protecting materialmen and suppliers who in good faith furnish materials for the construction of a building (see *Brady Brick & Supply Co. v. Lotito*, 43 Ill. App. 3d 69, 72 (1976)), the Act, in fact, seeks to balance the rights and duties of subcontractors, materialmen, and owners alike (see *Struebing Construction Co.*, 281 Ill. App. 3d at 694).

Normally, of course, there is no need to strike any balance because the immediate contractor would not be in bankruptcy and a materialman-subcontractor like Bricks would be fully compensated. However, in this instance, we have found that as between a materialman-subcontractor and an owner with no knowledge of the former's existence, the balance is struck in favor of the latter. Thus, the trial court properly found that Bricks' lien was limited to the $10,000 owed to G&B at the time the notice of the lien was served on Cole Taylor Bank and C&F.

Affirmed.

CAMPBELL and GREIMAN, JJ., concur.