# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Doors Acquisition, LLC v. Rockford Structures Construction Co.*, 2013 IL App (2d) 120052**

| | |
|---|---|
| Appellate Court Caption | DOORS ACQUISITION, LLC, as Assignee of ARC One, LLC., Plaintiff, v. ROCKFORD STRUCTURES CONSTRUCTION COMPANY; NU-CON CONSTRUCTION COMPANY; FRED LENZ, d/b/a Lenz Decorators; ROCK VALLEY GLASS OF ROCKFORD, INC.; CITY WIDE INSULATION INC.; and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, Defendants (District Council No. 30 of the International Union of Painters and Allied Trades, AFL-CIO, Plaintiff-Appellee; Norman J. Weitzel, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-0052 |
| Filed | March 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When plaintiff painters union filed a subcontractor's mechanics lien based on its members not being paid for work on a construction project and the union not receiving benefit contributions, the trial court erred in finding that the general contractor's payment of the subcontractor that hired the painters did not invalidate the lien, since the general contractor provided the owner with a sworn statement that the painting subcontractor had been paid in full and the owner had no notice that the painters and their union were not paid, and under the circumstances, the balance should be struck in favor of the owner, especially when the union was not without recourse. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, Nos. 08-CH-1278, 08-CH-1477; the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Donald Q. Manning, of McGreevy Williams P.C., of Rockford, for appellant. |
| | |
| | Raphael E. Yalden II and Craig A. Willette, both of Yalden, Olsen & Willette, of Rockford, for appellee. |

| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. |
| | Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1     In 2006, defendant, Norman J. Weitzel, contracted with Rockford Structures Construction Company (Rockford Structures) to build a hotel in Rockford. As the general contractor, Rockford Structures retained D&P Chicago, Inc. (D&P), as a subcontractor to supply, install, and finish drywall in connection with the project. After Rockford Structures terminated D&P, plaintiff, District Council No. 30 of the International Union of Painters and Allied Trades, AFL-CIO (the union), filed a subcontractor mechanics lien on the property pursuant to the Mechanics Lien Act (the Act) (770 ILCS 60/1 *et seq.* (West 2008)). The lien resulted from union members not being paid wages and the union not receiving benefit contributions. Weitzel countered that on January 10, 2008, Rockford Structures furnished a contractor's sworn statement averring that D&P had been paid in full for its work on the project.

¶ 2     Thereafter, the trial court entered an order finding that payment in full to D&P did not invalidate the union's mechanics lien and ordering Weitzel to pay the union $32,619.90, plus interest and costs, within 30 days or be subject to a judgment of foreclosure. Weitzel timely appealed. For the reasons set forth below, we reverse.

¶ 3                                I. Background

¶ 4     The parties' stipulated facts reflect that Rockford Structures was the general contractor pursuant to a contract with Weitzel to build a hotel. In May 2007, Rockford Structures retained D&P to supply, install, and furnish drywall for the project. Pursuant to a collective bargaining agreement, D&P employed union members who performed covered work and made improvements to the property.

¶ 5     In November 2007, Rockford Structures terminated its contract with D&P. However, D&P failed to pay $6,591.30 in wages to five union members who performed work on the project, and it failed to pay $17,003.98 in benefits to the union's benefit funds for covered

-2-

work. The unpaid wages and benefit funds related to work performed from August 2007 through November 9, 2007.

¶ 6      On January 10, 2008, Rockford Structures provided a sworn statement to Weitzel. The sworn statement specified that "the following are names of all parties who have furnished material or labor *** and the amount due or to become due to each." Line 15b of the sworn statement specified that D&P had been paid $130,398.34, no further balance remained due to D&P, and D&P was "100%" complete. The union workers were not separately listed in the sworn statement.

¶ 7      On March 6, 2008, the union filed its subcontractors mechanics lien pursuant to the Act. The lien claimed that the union was owed a credit of $23,595.28 for work performed by its members, in addition to interest and attorney fees. The union served the lien on Weitzel, Rockford Structures, and D&P. When he received notice of the lien, Weitzel was not aware that D&P had failed to make wage and benefit payments under its collective bargaining agreement with the union. After receiving notice of the lien, Weitzel made payments to Rockford Structures and other subcontractors who worked on the project.

¶ 8      On November 11, 2008, the union filed a complaint seeking foreclosure of the mechanics lien. The union also brought a claim of unjust enrichment. On December 21, 2011, following a hearing, the trial court entered an order finding that the union had a valid lien and ordering Weitzel to pay $32,619.90, plus $289.76 in costs, within 30 days. The order provided that, if Weitzel failed to pay the union within 30 days, the sheriff would execute a judgment of foreclosure. The order further provided that it was a "final order and that there is no just reason for delaying enforcement of this [j]udgment or appeal therefrom." Weitzel timely appealed.

¶ 9                           II. Discussion

¶ 10      The only issue in this appeal is whether the trial court properly held that, under the Act, the union was entitled to a lien on the property. Weitzel argues that, because D&P had been paid in full when Weitzel received notice of the union's lien, the union could not recover an amount beyond what was owed to its immediate contractor. The union counters that, pursuant to the Act, the only limitation placed on a subcontractor mechanics lien is the contract price between the owner and the general contractor, in this case the contract price between Weitzel and Rockford Structures.

¶ 11      Resolution of this issue requires us to interpret the Act. 770 ILCS 60/1 *et seq.* (West 2010). The primary objective of statutory interpretation is to give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the language of the statute given its plain, ordinary, and popularly understood meaning. *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). The statute " 'should be read as a whole with all relevant parts considered.' " *Id.* (citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)). If the statutory language is clear, a reviewing court does not need to resort to extrinsic aids of construction, such as legislative history. *Northern Kane Educational Corp. v. Cambridge Lakes Education Ass'n*, 394 Ill. App. 3d 755, 758 (2009). In such a situation, a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are

inconsistent with the express legislative intent. *Landheer v. Landheer*, 383 Ill. App. 3d 317, 321 (2008). Nonetheless, when reviewing a statute, we also consider the subject it addresses and the legislature's apparent objective in enacting the statute, while presuming that the legislature did not intend to create absurd, inconvenient, or unjust results. *Fisher v. Waldrop*, 221 Ill. 2d 102, 112 (2006). The construction of a statute presents a question of law, which we review *de novo*. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510-11 (2007).

¶ 12　　　The Act "aims to 'protect those who in good faith furnish material or labor for construction of buildings or public improvements.' " *LaSalle Bank National Ass'n v. Cypress Creek 1*, *LP*, 242 Ill. 2d 231, 243 (2011) (quoting *Lawn Manor Savings & Loan Ass'n v. Hukvari*, 78 Ill. App. 3d 531, 532 (1979)). Toward that end, section 5 of the Act provides:

> "(a) It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor *** a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or machinery *** and of the amounts due or to become due to each." 770 ILCS 60/5 (West 2010).

Section 21(a) of the Act defines subcontractors and provides that, subject to section 5, subcontractors "shall have a lien for the value [of the services provided], with interest on such amount ***, on the same property as provided for the contractor *** [and] on the moneys or other considerations due or to become due from the owner under the original contract." 770 ILCS 60/21(a) (West 2010). Section 24 of the Act further provides:

> "[Subcontractors] or parties furnishing labor *** may at any time after making his or her contract with the contractor, and shall within 90 days after the completion thereof, *** cause a written notice of his or her claim and the amount due or to become due thereunder ***." 770 ILCS 60/24 (West 2010).

Finally, section 27 outlines the preferences after an owner receives a lien, providing:

> "When the owner or his agent is notified as provided in this Act, he shall retain from any money due or to become due the contractor, an amount sufficient to pay all demands that are or will become due such sub-contractor ***." 770 ILCS 60/27 (West 2010).

¶ 13　　　Our supreme court recently addressed a claim by a subcontractor under the Act. In *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385 (2009), the university hired a general contractor for the renovation of a residence hall, and the general contractor entered into a contract with a subcontractor, Excel, to provide electrical labor, materials, and services. *Id.* at 388. On five separate occasions, the general contractor furnished the university a section 5 sworn statement requesting payment from the university, and each statement listed Excel as a subcontractor and the amount due to Excel. *Id.* After receipt of the first four statements, the university paid the general contractor, which in turn paid Excel the amounts listed in the statement. *Id.* After the fifth statement, however, the general contractor's bank applied part of the university's payment to an outstanding debt owed by the general contractor. As a result, Excel did not receive its final payment. *Id.* Thereafter, Excel filed a subcontractor mechanics lien against the university for its work on the project. *Id.*

¶ 14 The supreme court concluded that Excel was entitled to enforce its mechanics lien. *Id.* at 395. In reaching its determination, the supreme court held that the purpose of the section 5 sworn statement is to put the owner on notice of subcontractor claims and to create a duty upon the owner to pay any claims by subcontractors named in the statement. *Id.* at 393. The supreme court further opined:

> "What is clear from our reading of the Act is that the legislature intended the following orderly method of conducting construction transactions to protect subcontractor claims: (1) the owner and general contractor enter into a contract for the construction work; (2) as the work is completed, the general contractor submits a section 5 sworn affidavit that must list all subcontractors and the amount due, to become due, or advanced; (3) when the section 5 sworn affidavit lists an amount due or to become due a contractor, section 24 requires the owner to retain sufficient funds to pay the subcontractor; and (4) section 27 requires the owner to make subcontractor payments upon receiving notice of a subcontractor claim pursuant to a section 5 sworn statement." *Id.*

Thus, according to the supreme court, because the section 5 sworn statement gave the university notice of the amount due to Excel, the university could not pay the general contractor and rely on the general contractor to distribute those funds. *Id.* at 395.

¶ 15 In addition, the Illinois Appellate Court, First District, previously addressed whether a sub-subcontractor's lien was limited to the amount owed to its immediate contractor. In *Bricks, Inc. v. C&F Developers, Inc.*, 361 Ill. App. 3d 157 (2005), the plaintiff supplied $64,510.22 in materials and supplies for the construction of a property. *Id.* at 159. However, a defendant masonry contractor, who was a subcontractor to the project's general contractor and was the plaintiff's immediate contractor, failed to pay the plaintiff for the materials and supplies. *Id.* The general contractor's section 5 sworn statement listed the masonry subcontractor but did not list the plaintiff as the supplier of materials. *Id.* Subsequent waivers of liens also failed to identify the plaintiff as supplying materials and, further, indicated that the masonry contractor had been paid $260,000 of the $270,000 owed pursuant to its contract. *Id.* Thereafter, the plaintiff served a mechanics lien on the owner. *Id.* at 160. The trial court granted the owner's partial motion for summary judgment, concluding that the plaintiff was limited to recovering only the $10,000 owed to its immediate contractor. *Id.*

¶ 16 On appeal, the reviewing court affirmed the trial court's determination. *Id.* at 165. The reviewing court began its analysis by noting that one of the purposes of the Act was to protect the interests of materialmen by permitting them to obtain a lien upon a premises when an owner receives the benefit of improved property. *Id.* at 163. The reviewing court, however, emphasized that, "in addition to protecting the rights of those furnishing labor and materials, the Act also seeks to protect owners from the potential claims of subcontractors." *Id.* Therefore, the reviewing court concluded that the trial court's judgment was proper because, although the plaintiff properly served notice of its subcontractor lien pursuant to section 24 of the Act, the owner did not receive notice of that lien until it had paid all but $10,000 of the amount owed to the plaintiff's immediate contractor. *Id.* at 163-64.

¶ 17 In reaching its determination, the reviewing court noted that prior reviewing courts had held that an owner can rely on sworn statements from its general contractor. *Id.* at 165 (citing

*Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 656 (1995)). In closing, the reviewing court noted:

"We empathize with [the plaintiff's] plight. We recognize that in the instant case, [the plaintiff] filed its notice in compliance with the provisions of section 24 of the Act and yet, despite this compliance, its recovery was limited to less than the full amount of the materials it provided. Though this result seems contrary to one of the Act's goals of protecting materialmen and suppliers who in good faith furnish materials for the construction of a building [citation], the Act, in fact, seeks to balance the rights and duties of subcontractors, materialmen and owners alike [citation].

Normally, of course, there is no need to strike any balance because the immediate contractor would not be in bankruptcy and a materialman-subcontractor like [the plaintiff] would be fully compensated. However, in this instance, we have found that as between a materialman-subcontractor and an owner with no knowledge of the former's existence, the balance is struck in favor of the latter." *Id.*

¶ 18     We find the reasoning by the court in *Bricks* persuasive. The Act seeks to balance the rights of owners, contractors, and subcontractors; and thus, one purpose of a section 5 sworn statement is to protect owners from claims by unknown subcontractors. See *id.* at 163-64. Consistent with that purpose, the balance should be struck in favor of the owner when the owner properly relies on a section 5 sworn statement from a general contractor that a subcontractor has been paid and a lower-tier contractor is not listed, even if the lower-tier contractor later complies with the Act's requirements. *Id.* In this case, similar to the circumstances in *Bricks*, Weitzel did not receive notice of the union's lien until after he had received Rockford Structures' section 5 sworn statement reflecting that D&P had been paid in full. Therefore, as in *Bricks*, the union is limited to recovering what was owed to its immediate contractor. See *id.*

¶ 19     We are cognizant that the language contained in section 21 provides that a subcontractor shall have a lien for the value of services provided against the amount due or to become due from the owner under the original contract (770 ILCS 60/21 (West 2010)), and that section 24 permits a subcontractor to serve notice of a lien upon an owner (770 ILCS 60/24 (West 2010)). Nonetheless, "it is axiomatic that in matters of statutory construction, we cannot allow formality to trump substance where the result would be contrary to the purposes for which the statute was enacted and lead to consequences which the legislature could not have intended." *Township of Jubilee v. State of Illinois*, 2011 IL 111447, ¶ 35. The Act seeks to *balance* the rights of owners, contractors, and subcontractors, and allows those furnishing labor to obtain a lien where the owner has received the benefit of improvements or increased property value. *Bricks*, 361 Ill. App. 3d at 163. We question whether the legislature could have intended that, when the owner pays a subcontractor for the value of the services the owner received, a lower-tier subcontractor can recover from the owner an amount beyond what the owner was required to pay the lower-tier subcontractor's immediate contractor.

¶ 20     Moreover, we find the cases the union cites, *A.Y. McDonald Manufacturing Co. v. State Farm Mutual Automobile Insurance Co.*, 225 Ill. App. 3d 851 (1992), and *Struebing Construction Co. v. Golub-Lake Shore Place Corp.*, 281 Ill. App. 3d 689 (1996),

distinguishable. In *A.Y. McDonald*, the Fourth District held that the plaintiff, a third-tier subcontractor, had a valid lien on the property and, further, was not limited to recovering the amount owed to its immediate contractor. *A.Y. McDonald*, 225 Ill. App. 3d at 858-60. However, in that case, the defendant-owner admitted that it did not comply with the Act, because it failed to obtain a section 5 sworn statement. See *id.* at 855. In addition, unlike in this case, where the union's immediate contractor had already been paid in full, the plaintiff's immediate contractor in *A.Y. McDonald* was not owed further compensation because it defaulted on its contract. See *id.* at 858.

¶ 21        In *Struebing*, the First District found that the plaintiff, a lower-tier subcontractor, had a valid lien against the defendant-owners after its immediate contractor failed to pay it. *Struebing*, 281 Ill. App. 3d at 694-95. However, in that case, although the section 5 sworn statement did not list the plaintiff, the trial court found that the owner and general contractor "had actual notice of [the plaintiff's] role in the project" before the plaintiff filed notice of its lien. *Id.* at 691-92. Conversely, in this case, the record does not indicate that Weitzel had notice of the union's role in the construction before the union filed its notice of lien, which occurred after Weitzel paid in full the union's immediate contractor, D&P. For these reasons, we find the circumstances here more similar to those in *Bricks*.

¶ 22        We further find the supreme court's holding in *Weather-Tite* not applicable to the current matter. In that case, the general contractor's section 5 sworn statement to the owner reflected an outstanding amount owed to the subcontractor. *Weather-Tite*, 233 Ill. 2d at 388. Nonetheless, the owner failed to retain sufficient funds to pay the subcontractor, but instead paid the general contractor and relied on the general contractor to pay the subcontractor. *Id.* The supreme court concluded that, once the owner had notice of the amount owed to the subcontractor, the owner could not rely on the general contractor to distribute funds to the subcontractor. *Id.* at 395. Conversely, in this case, Weitzel was not aware of the union's lien when the sworn statement from Rockford Structures reflected that D&P had been paid in full. Thus, this is not a case in which the owner was aware of an outstanding amount owed to a subcontractor, but relied on the general contractor to distribute that amount to the subcontractor.

¶ 23        In closing, as did the reviewing court in *Bricks*, we empathize with the union's plight. See *Bricks*, 361 Ill. App. 3d at 165. The union's workers provided services on the property and were not compensated for their services despite D&P, the union's immediate contractor, being paid in full. However, the Act requires us to strike a balance between owners, contractors, and subcontractors. *Id.* In this situation, where an owner receives a section 5 sworn statement reflecting that a subcontractor has been paid in full, and the owner has no notice at that time that the subcontractor did not pay one of its lower-tier subcontractors, we believe the balance should be struck in favor of the owner. See *id.* We further note that the union is not without recourse. See 29 U.S.C. § 185(b) (2006) (providing that a labor union may sue on behalf of the employees it represents); see generally *Central Laborers' Pension Fund v. Nicholas & Associates, Inc.*, 2011 IL App (2d) 100125 (holding that the Act is not preempted by an action to collect delinquent benefit contributions pursuant to the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 *et seq.* (2006)).

¶ 24                                    III. Conclusion

¶ 25       For the foregoing reasons, we reverse the judgment of the circuit court of Winnebago County.

¶ 26       Reversed.