BRADY BRICK & SUPPLY CO., Plaintiff-Appellee, *v.* THOMAS LOTITO *et al.*, d/b/a Lakeview Masonry, *et al.*, Defendants-Appellants.

Second District (2nd Division)    No. 75-534

Opinion filed October 26, 1976.

Schaffner & Ariano, of Elgin, and Marvin A. Miller, of Chicago, for appellants.

Leo M. Flanigan, Jr., of Brittain, Ketcham, Strass & Terlizzi, and Gromer, Abbott, Wittenstrom & Strom, both of Elgin, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

A suit was brought by Brady Brick & Supply Co., supplier of 31,560 white bark Norman bricks and other material, to foreclose its mechanic's lien against certain real estate in West Dundee owned by the National Bank of Albany Park in Chicago, as Trustee. Anthony N. Chirikos and Dolores Chirikos were the beneficial owners of the trust and are also defendants.

A separate suit was brought by Thomas Lotito and Brian Christiansen, partners doing business as Lakeview Masonry, to enforce their mechanic's lien for labor and materials furnished to and incorporated into the same real estate.

The two cases were consolidated and after trial the Circuit Court of Kane County entered judgment in each case in favor of the plaintiffs and against the defendant owners who take this appeal.

The bricks furnished by Brady were ordered by Anthony Chirikos in March or April of 1974. Previous to this time Chirikos had built two other buildings in his Tonde Shopping Center using the same type of brick but laid by a mason by name of Schmidgall. In the case of the prior two buildings Chirikos had ordered the bricks and the bill was sent by Brady to the mason who paid the bill. The testimony here was that because of a brick shortage Chirikos agreed that Brady should preorder the bricks and deliver them to the job site but that they would be invoiced to the successful bidder which would be either Schmidgall or Lakeview. Brady delivered bricks of a value of $5,003.87 by May 17. Other building materials were also supplied by Brady.

Lakeview submitted a written proposal to Chirikos in which Lakeview agreed "to furnish all material and perform all labor necessary" to

construct the third building in the Tonde Shopping Center. The proposal included a clause that "payments to be made as job progresses." Chirikos accepted the proposal and a binding contract was made May 8, 1974.

Brady sent a bill to Lakeview for the bricks on or about May 30, 1974, and again on June 30, 1974. It was conceded by Lotito that if Chirikos had paid Lakeview, Lakeview would have paid Brady's bill for the bricks.

Brady was not paid, however, and Brady proceeded to perfect its mechanic's lien rights against the property by following the steps required by the Mechanics' Liens Act (Ill. Rev. Stat. 1973, ch. 82, pars. 1-39).

Brady's complaint to foreclose its mechanic's lien was filed November 6, 1974. The owners' answer admits that the bricks and building materials and supplies furnished by Brady constitute a permanent and valuable improvement on the real estate in question. There was testimony that the bricks and materials furnished by Brady and as installed enhance the value of the owners' real estate by more than $5,000.

Unknown to Brady, Chirikos and Lakeview had a disagreement. Lakeview had begun the job in May and after about a month, on June 14, 1974, requested a first progress payment of $10,000 which payment was made about July 1, 1974. On July 7 Lakeview requested a second progress payment of $7,000 which was not paid. Chirikos contended that there was not sufficient work done to warrant the payment and that it would not be approved by his lending institution. Lakeview by July 1 had paid out $7,836 in wages for labor on the job and had paid two material companies, Acme Brick & Supply Co. $907.73 and Valley Block Company $918.54, for material (a total pay out of $9,662.27). Acrimonious conversations between Lotito and Chirikos ensued. Chirikos refused to pay any amount. Lakeview walked off the job and refused to return only if the $7,000 was escrowed. About two weeks later Chirikos found another mason to complete the building and entered into a written contract on August 28, 1974 to complete the job for $9,500. Lakeview presented testimony that it had laid 25,074 bricks from of a total of 32-34,000. Chirikos' witness did not challenge that statement but testified that he did 50% of the work since the last work was time consuming.

At the conclusion of all the evidence the trial judge found for Brady in the amount of $5,705.16 against all defendants except Lakeview, and in favor of Lakeview and against all defendants in the amount of $1,544.84.

I

The first contention on appeal is that the trial court erred in refusing to grant defendants' motion for judgment at the close of plaintiffs' cases. After denial of the motions defendants proceeded to adduce evidence in support of their defense.

■■ Section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110,

par. 64(3)) provides for motions for a finding, judgment or decree at the close of plaintiff's case in nonjury matters. The last sentence of the Act is as follows:

> "If the ruling on the motion is adverse to the defendant he may proceed to adduce evidence in support of his defense, in *which event the motion is waived.*" (Emphasis supplied.)

Defendants introduced evidence after denial of their motion to dismiss. Introduction of such evidence is deemed to be a withdrawal or waiver of the motion to dismiss. (*Havill v. Darch,* 320 Ill. App. 667, 670.) The issue will not, therefore, be considered on appeal.

## II

It is not contested that Brady Brick in establishing their right to a lien have complied strictly with all of the statutory requirements. Defendants argue that the evidence in support of Brady's claim establishes that Lakeview is obligated to pay the material charges, that all billings were to Lakeview, the written agreement between Lakeview and the defendants provides that Lakeview pay for the material, the admission of Lotito that he would pay the Brady bill by mid-July and that if the judgments entered are permitted to stand defendants will have paid $26,750 to construct a building which should have only cost $21,000. The argument totally ignores the fact that this is a mechanic's lien case. Chirikos admits that the bricks were furnished by Brady which were incorporated into and constitute an enhancement of the value of his building. He admits that the bricks had not been paid for and that the price was as agreed but says that Lakeview owes the bill. It was precisely for this type of situation that the Mechanics' Liens Act was enacted, to protect materialmen, who in good faith furnish materials for the construction of a building and to allow the materialman to collect his bill from the owner via a mechanic's lien foreclosure suit, when the contractor, subcontractor, and or owner fail to pay the materialman. *Gunther v. O'Brien Brothers Construction Co.,* 293 Ill. App. 28; Miles, *The Mechanic's Lien,* 48 Ill. B. J. 736 (1960).

The Brady complaint and the defendants' answer thereto proceeded on the theory that Brady was a subcontractor (rather than an original contractor) who furnished material to Lakeview for use on the owners' property.

■■ A person who furnishes material to an original contractor and who is sometimes called a materialman is a subcontractor in the truest sense. *Decatur Bridge Co. v. Standart,* 208 Ill. App. 592, 595.

■■ As a general rule the subcontractor's rights are based upon and limited by the original contractor's contract in several respects. The first respect is price. Except under certain conditions created by the Act the

subcontractor whose claims are unpaid may not recover from the original owner a sum which will make the total cost to the owner greater than that specified in the original contract between the owner and the original contractor. *Gunther v. O'Brien Brothers Construction Co.*, 369 Ill. 362, 368.

To the above rule, that the owner cannot be compelled to pay more than the original contract price there are several exceptions created by the Act, one of which is: if the owner makes any payments to the original contractor which are in violation of the rights of any subcontractor, then as to such person, such payments are wrongfully made, and the owner is not entitled, in his controversy with that person, to any credit for those payments. Under these circumstances, the owner may be compelled to make payment to a subcontractor even though he has made payment in full to the original contractor. *Krack Corp. v. Sky Valley Foods, Inc.*, 133 Ill. App. 2d 469, Illinois Mechanics' Liens, ch. 4, § 113 (Ill. Inst. Cont. Educ. 1974).

■■ Here the owner made a $10,000 payment without requiring a sworn statement from Lakeview the original contractor. Under section 5 of the Act and the subsequent 90-day notice by Brady to the owner apprising the owner of Brady's claim the payment by the owner to Lakeview will be deemed to have been wrongfully made. "The law is that an owner of premises who makes payments to the original contractor without securing from him the verified statement of the parties furnishing labor and materials as required by Section 5 is not relieved from liability to a subcontractor even though payments were made before the latter served the notice provided for in the act." (*Fred C. Kramer Co. v. La Salle National Bank*, 36 Ill. App. 2d 406, 414-15.) An owner who pays the original contractor without requiring the statement cannot complain because he is compelled to pay more than the contract price. *Gilbert v. Croshaw*, 178 Ill. App. 10; Illinois Mechanics' Liens 4-12 (Ill. Inst. Cont. Educ. 1974).

The Brady judgment is affirmed.

### III

■■ Building and construction contracts frequently provide for partial payments to be made to the contractor as the work progresses, either periodically or upon completion of specified stages of the work and like any other contract may be rescinded for default in performance. The failure to pay an installment of the contract price as provided in a building or construction contract is a substantial breach of the contract and gives the contractor the right to consider the contract at an end, to cease work, and to recover the value of the work already performed. 13

Am. Jur. 2d *Building and Construction Contracts* §102 (1964); *Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 157 A.L.R. 57.

■■ The issue here between the owners and the contractors is which of the parties broke the contract which provided "Payments to be made as job progresses"—a most ambiguous provision. The parties placed a conflicting construction on the meaning of the provision. The evidence was controverted as to the meaning. A fact question was presented therefore for determination by the trier of the fact, in this case the trial judge. The uncontroverted evidence was that the contractors had invoiced the owners for work done and materials furnished to June 14 but that payment was not made until July 1. On July 7 or 8 a second payment was requested and totally refused by the owners. The contractors worked on the job until refusal of the second payment laying 25,074 bricks out of a total of 32-34,000 to be laid by virtue of the contract. The trial court chose to believe and lend more weight to the testimony presented by the contractor. The court found the request for the second payment to be reasonable and consistent with the contract and the refusal by the owner to pay to be a breach of the contract and ground for rescission by the contractor.

From a review of all the testimony we cannot say that the finding of the trial court is manifestly against the weight of the evidence. The judgment of the trial court is affirmed.

We find no reversible error in these cases and the judgments of the circuit court of Kane County are hereby affirmed.

Judgments affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.