2015 IL App (1st) 133624

FIRST DIVISION
JULY 27, 2015

No. 1-13-3624

| | | |
|---|---|---|
| GX CHICAGO, LLC, an Illinois Limited Liability Company, and LEDCOR CONSTRUCTION, INC., a Washington Corporation, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs and Counterdefendants-Appellees, | ) ) | |
| v. | ) ) | |
| GALAXY ENVIRONMENTAL, INC., SHERWIN-WILLIAMS COMPANY, an Ohio Corporation, JESUS PEOPLE, U.S.A. FULL GOSPEL MINISTRIES d/b/a Lakefront Supply, an Illinois Corporation, UNKNOWN OWNERS, NON-RECORD CLAIMANTS, and THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) ) ) ) ) | No. 12 CH 00739 |
| Defendants and Counterdefendants | ) ) | |
| (Creative Vistas, Inc., Decmen Construction Inc., Greenwerks Recycling, Inc., Highlander Builders, Inc. and Householder Accounting Services, Inc., each an Illinois Corporation, Defendants and Counterplaintiffs-Appellants). | ) ) ) ) ) | Honorable Lewis M. Nixon, Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    This dispute concerns mechanics liens arising from a construction project to develop

certain real property owned by plaintiff-appellee GX Chicago, LLC (the owner).

¶ 2                                BACKGROUND

¶ 3    On or about September 2, 2010, the owner contracted with plaintiff-appellee Ledcor

Construction Inc. (Ledcor) to serve as the general contractor for the project.  Ledcor contracted

with various subcontractors for the project.  One such subcontractor was Galaxy Environmental,

Inc. (Galaxy), who entered into a contract with Ledcor in March 2011 to perform masonry work on the project. Galaxy, in turn, entered into subcontracts with various other parties to provide materials and labor on the project. Those subcontractors included the five defendants-appellants herein: Creative Vistas, Inc.; Decmen Construction, Inc.; Greenwerks Recycling, Inc.; Highlander Builders, Inc.; and Householder Accounting Services, Inc. (together, the Galaxy subcontractors).

¶ 4    Through a series of "change order" requests submitted from Galaxy to Ledcor, the amount of the Ledcor-Galaxy contract was steadily increased from an original amount of $199,500 to an adjusted contract price of $518,185.75. Over the course of its work, Galaxy submitted periodic applications for payment to Ledcor between April and June 2011. Galaxy's last application for payment, dated June 30, 2011, claimed a "current payment due" to Galaxy of $117,201.06. That submission by Galaxy did not inform Ledcor that there were any outstanding amounts owed to the Galaxy subcontractors.

¶ 5    On July 15, 2011, Ledcor made a corresponding payment to Galaxy in the amount of $117,201.06. Sometime after that July 2011 payment, the owner and Ledcor became aware that certain of Galaxy's subcontractors had not received payment from Galaxy for the work they performed on the construction project. After that time, Ledcor made no further disbursements to Galaxy.

¶ 6    In October and November 2011, the Galaxy subcontractors served the owner and Ledcor with various notices of mechanics liens, for claims totaling $267,989.98. The amounts claimed by the Galaxy subcontractors far exceeded the amount that Ledcor believed was remaining to be paid on its contract with Galaxy; specifically, Ledcor asserted that only $126,178.30 remained to be paid out of the total Ledcor-Galaxy contract amount of $518,185.75. Ledcor took the position

that it could not be liable to Galaxy's subcontractors for any amount exceeding that $126,178.30 sum.

¶ 7 In December 2011, counsel for Ledcor advised Galaxy and the Galaxy subcontractors of "Ledcor's position that neither Ledcor nor owner owe more than $126,178.37 to Galaxy and its second tier subcontractors." Ledcor indicated that it was prepared to pay out that amount, but that if agreement could not be reached, Ledcor would seek relief from the circuit court for "a determination and ruling that neither Ledcor nor owner owe Galaxy or its [subcontractors] an amount greater than $126,178.37." Shortly thereafter, Galaxy responded that an agreement could not be reached with the Galaxy subcontractors.

¶ 8 Accordingly, on January 9, 2012, the owner and Ledcor filed a complaint pursuant to section 30 of the Mechanics Lien Act (the Act), which states: "If there are several liens *** upon the same premises, and the owner or any person having such a lien shall fear that there is not a sufficient amount coming to the contractor to pay all such liens" the owner may file a complaint for the court to determine "the amount due from the owner to the contractor, and the amount due to each of the persons having liens." 770 ILCS 60/30 (West 2012).

¶ 9 The owner and Ledcor's section 30 complaint pleaded that the Galaxy subcontractors had claims totaling $267,989.98, but that "there remains to be paid out to Galaxy under its contract with Ledcor, *** the sum of $126,178.19." The section 30 complaint sought an accounting to determine: the amount due to Galaxy under the Ledcor-Galaxy contract; the amounts due to Galaxy's subcontractors; and "the amount due from the [owner] to [Ledcor] under their contract with respect to the amounts due and payable to Galaxy and its sub-subcontractors."

¶ 10 On July 2, 2012, the Galaxy subcontractors filed their answer and three affirmative defenses to the owner and Ledcor's complaint. In the first affirmative defense, they asserted that

full payment for their work was past due under the Contractor Prompt Payment Act. See 815 ILCS 603/1 *et seq.* (West 2012). Second, the Galaxy subcontractors asserted an "unclean hands" defense, claiming that certain change orders relied upon by Ledcor and Galaxy to support their position that only $126,178.19 remained due on the Ledcor-Galaxy contract were fraudulently created "*ex post facto*" "months after the original change orders were generated [and the] work was completed." The Galaxy subcontractors stated that through such change orders Ledcor had misrepresented that the Ledcor/Galaxy contract totaled $518,185.75 and that there was only $126,178.19 remaining due on the contract. The Galaxy subcontractors asserted that the actual value of the Ledcor/Galaxy contract was higher, "about $610,553.75," and that the unpaid balance was actually $218,546.19. Thus, the Galaxy subcontractors alleged that Ledcor and Galaxy worked together to mislead the Galaxy subcontractors "into believing the Galaxy/Ledcor Contract, as amended, was smaller in scope and dollar amount, with about $92,368.00 less due and payable available" to the Galaxy subcontractors. As a third affirmative defense, the Galaxy subcontractors claimed that after they notified the owner of their mechanics liens, pursuant to the Act the owner was required to withhold sufficient funds from Ledcor to pay their claims. The Galaxy subcontractors thus argued that their claims "should be paid from the funds [the owner] withheld in accord with the Act, or if it failed to do so, directly by [the owner]."

¶ 11    Also on July 2, 2012, the Galaxy subcontractors filed a counterclaim against the owner, Ledcor, and Galaxy. The first eight counts of the counterclaim sought foreclosure of the Galaxy subcontractors' mechanics liens. Counts 9 through 16 of the counterclaim asserted breach of contract claims against Galaxy, and counts 17 through 24 pleaded *quantum meruit* claims against the owner and Ledcor, seeking to recover for the value of work performed on the project.

¶ 12 The Galaxy subcontractors subsequently served discovery requests upon the owner and Ledcor concerning the contract between owner and Ledcor, the Ledcor-Galaxy contract, and contracts and payments between Galaxy and its subcontractors. The requests sought, among other information, any outstanding amounts owed from the owner to Ledcor on the entire project (not just the portion performed by Galaxy); all records of payments between Ledcor and Galaxy, lien waivers or contractor's affidavits prepared by Galaxy, and the amount due to Galaxy from Ledcor on the project.

¶ 13 On August 1, 2012, the owner and Ledcor moved to stay the discovery propounded by the Galaxy subcontractors. Their motion argued that discovery was not needed to resolve the Galaxy subcontractors' mechanics lien claims because all documents necessary to decide the section 30 proceeding had been attached to the owner and Ledcor's complaint, specifically: the Ledcor-Galaxy contract and related change orders, copies of Galaxy's submitted payment applications to Ledcor, and Ledcor's sworn statement to the owner reflecting Ledcor's last payment to Galaxy. In response, on August 8, 2012, the Galaxy subcontractors moved to compel the owner and Ledcor to respond to their discovery.

¶ 14 The court heard argument on the discovery motions on November 20, 2012. At the hearing, it became apparent that the discovery dispute stemmed largely from a disagreement as to interpretation of the relevant inquiry under section 30 of the Act. In particular, the parties disputed the meaning of section 30's statement that "the court shall find the amount due from the owner to the contractor" for purposes of determining the amounts available to satisfy the Galaxy subcontractors' mechanics liens. 770 ILCS 60/30 (West 2012).

¶ 15 The owner and Ledcor contended that, since all of the lien holders were subcontractors of Galaxy, the relevant amount under section 30 is the amount that was remaining due to Galaxy.

Thus, the owner and Ledcor contended that section 30 limited their liability to Galaxy's subcontractors to the amount still owed to Galaxy—the lien claimants' immediate contractor. As a result, they argued that the Galaxy subcontractors' discovery requests, which largely concerned amounts owed from the owner to Ledcor for the *entire* construction project, were irrelevant. In other words, they argued that Galaxy was the relevant "contractor" for purposes of section 30's phrase "the amount due from the owner to the contractor." Moreover, Ledcor and the owner also argued that since "Galaxy is in agreement with Ledcor as to the amount that is owed to Galaxy," there was also no need for discovery on that question.

¶ 16    In contrast, the Galaxy subcontractors argued that section 30's phrase "the court shall find the amount due from the owner to the contractor" meant that the court needed to determine the amount owing from the owner to the *general contractor* on the project, Ledcor. Thus, the Galaxy subcontractors contended that the relevant pool of funds which could satisfy their lien claims under section 30 should be determined by the amount owed to the general contractor, and was not limited by the (much smaller) amount owed to Galaxy, their immediate contractor. The Galaxy subcontractors' counsel thus argued they needed discovery to determine how much was owed from the owner to Ledcor on the entire construction project, noting that the original contract was "12 or 15 million [dollars] between the owner and Ledcor." The trial court doubted the subcontractors' position, remarking "I don't know if you're entitled to get into that 12 or 15 million." The Galaxy subcontractors' counsel summarized the statutory interpretation dispute as: "[D]o you look at the amount that's owed by the owner to the  general contractor or do you look at only what is owed by the general contractor to Galaxy? *** It all comes down to construing section 30, the pie that you split up among the lien claimants."

¶ 17    The trial court did not decide the statutory interpretation issue at the November 20, 2012 hearing, but requested that the parties submit additional information for a "limited hearing" to "determine how much is due and owing the contractor" under section 30.  The court indicated that it did not need to hear witness testimony, but requested that Ledcor's counsel provide documents to the court regarding the relationship of the various parties, including Galaxy and each of the Galaxy subcontractors, and the work performed by each on the project. The court further instructed Ledcor's counsel that "I need to know how you arrived at the amount of money that you say is owed [to Galaxy], and I would like a trail of payments, change orders, et cetera, from the 500 and whatever thousand dollars to the 126,000."

¶ 18    The Galaxy subcontractors' counsel asked the court if it intended to conduct an "evidentiary hearing."   The court indicated that "It's not really an evidentiary hearing, but it's an additional hearing *** to give me answers to those documents or questions."  The court indicated it did not need the Galaxy subcontractors to submit witness testimony "because you'll bring in all these people that say they did work, and I believe [the Galaxy subcontractors] did work."

¶ 19    Counsel for the Galaxy subcontractors also asked to submit case law that it claimed supported its interpretation of section 30, and the court agreed to review such case law.  The court directed that no discovery would occur pending resolution of the statutory question. Accordingly, the written order of November 20, 2012 directed the parties to provide to the court "documents and cites to authority going to the facts and law governing [section] 30 of the Mechanics Lien Act, including contracts, disbursements and balances owed between [the owner] and [Ledcor]", between [Ledcor] and Galaxy, and between Galaxy and [the Galaxy subcontractors]."  The court additionally ordered that the motion to stay discovery was "entered

and continued *** for hearing to review the parties' submission thereon, without evidentiary testimony."

¶ 20    On December 20, 2012, the Galaxy subcontractors submitted legal authorities purporting to support their position that section 30 "should not be altered by inserting additional limitations" and that nothing in section 30 limited the amount available to satisfy subcontractors' mechanics lien claims to the amounts owed to the claimants' *immediate* contractor.  Thus, they argued that "on a sub-subcontractor's claim, amounts owed the subcontractor are not considered and are no limitation on payment; only the amount owed by the owner to the contractor and the amount of the sub-subcontractor's valid lien are material."  In other words, they urged that section 30's reference to "the amount due from the owner to the contractor" meant the amount due from owner to its general contractor (Ledcor), and not the amount due to the claimants' immediate contractor (Galaxy).

¶ 21    On January 10, 2013, the court reviewed the parties' submissions pursuant to its November 20, 2012 order and heard additional argument with respect to interpretation of section 30.  Counsel for the owner and Ledcor stressed that Ledcor had no privity with the Galaxy subcontractors, that the owner and Ledcor were not aware that the Galaxy subcontractors had not been paid by Galaxy until the Galaxy subcontractors served their lien notices, and that the owner and Ledcor had not made any payments to Galaxy after receiving notice of those liens.  Ledcor's counsel argued that under the Act, "the owner cannot be subjected to a higher contract amount *** and is simply obligated to remit the remaining amounts due under the subcontract at the time it first received notice.  And once [the owner] ha[s] done that, it's under no further obligation to satisfy the amounts that the [Galaxy subcontractors] claim."

¶ 22 During the hearing, counsel for Ledcor and the owner also informed the court that, although their section 30 complaint had stated that the remaining amount due on the Ledcor-Galaxy contract was $126,178.19, they had since taken into account an additional change order of approximately $17,000, and that Ledcor, the owner, and Galaxy were now in agreement that the final amount remaining due on the contract was $143,122.38. The owner and Ledcor offered to deposit that amount "for distribution to all of the lien claimants."

¶ 23 The court asked counsel for the Galaxy subcontractors why they believed they could seek to recover a larger amount than that owed from the owner to Galaxy, their immediate contractor: "I need you to tell me why you think you can go after a different source of funds *** a different amount of money in a different pot that has nothing to do with your upstream subcontractor." Counsel for the Galaxy subcontractors acknowledged that, after the owner and Ledcor received notices of their liens, they had ceased paying Galaxy any further amounts. However, the Galaxy subcontractors argued that the owner was not protected under the Act because the owner continued to pay contractors on the project *besides* Galaxy after receiving the lien notices. In other words, the Galaxy subcontractors argued that the owner should not have paid any other contractor on the entire project (even those that had nothing to do with Galaxy), after receiving notice of the Galaxy subcontractors' liens. The court remarked: "So what you're saying is *** [the owner] should hold up payment from everybody while you guys fight it out?" The owner and Ledcor responded that to accept the Galaxy subcontractors' view of an owner's liability under the Act "would mean that there is no contract that an owner can enter into with a general contractor that would give the owner any certainty as to the amounts it would ultimately be responsible to pay."

¶ 24    At the hearing, the court indicated that it was inclined to interpret section 30's phrase "the amount due from the owner to the contractor" to mean "how much is owed Galaxy" rather than the amount due to the owner's general contractor.  However, the court acknowledged that the parties had not cited controlling case law explicitly deciding the question.

¶ 25    In addition to the statutory interpretation dispute, counsel for the Galaxy subcontractors also asserted at the hearing that, as a factual matter, the amount of money that was owed to Galaxy on its contract with Ledcor was larger than the $143,122.38 amount stated by the owner and Ledcor.    Ledcor's counsel responded that there was no factual issue because Galaxy's counsel had also agreed to that amount.

¶ 26    At the conclusion of the January 10, 2013 hearing, the court offered the owner and Ledcor an opportunity to submit further arguments on interpretation of the Act.  The court noted that, if it found in favor of the owner and Ledcor on the statutory interpretation issues, the pending motions on the Galaxy subcontractors' discovery requests would be moot.

¶ 27    After further briefing, on March 18, 2013, the court entered an order adopting the owner and Ledcor's interpretation of section 30 of the Act, thus limiting their liability to the Galaxy subcontractors to the $143,122.38 that remained due under the Ledcor-Galaxy contract. The court directed the owner and Ledcor to deposit that sum with the clerk of the circuit court, and that after depositing such funds, "neither [owner] nor [Ledcor] shall owe any further amount to [Galaxy] or to any of the subcontractors of [Galaxy]."  The order further specified that each of the Galaxy subcontractors "ha[s] a lien upon the said $143,122.38 funds, pro-rata pending further order of this Court."  The court expressly reserved decision on amounts owed by Galaxy to the Galaxy subcontractors, noting that:  "Any additional contract amounts that any subcontractor of

[Galaxy] believes it is entitled to be paid over and above said $143,122.38 must be pursued directly against [Galaxy]" under their relevant contracts.

¶ 28 The March 18, 2013 order further stated that the liens filed by the Galaxy subcontractors "are voided and unenforceable, because [owner] will be depositing the sum [of] $143,122.38 with the Clerk of the Court on Interpleader." On the same basis, the order also dismissed with prejudice the Galaxy subcontractors' three affirmative defenses to the section 30 complaint, the counts of the Galaxy subcontractors' counterclaim seeking to foreclose their mechanics liens, and the counterclaim's *quantum meruit* counts against the owner and Ledcor. The order specified that it was a "final judgment between [owner] and [Ledcor] and the other parties herein, but not as to causes of action against [Galaxy]." The order also specified that "[i]n accord with Illinois Supreme Court Rule 304(a), there is no just reason for delaying either enforcement or appeal" of the order. Also, on March 18, 2013, the court entered a separate order quashing the mechanics liens filed by the Galaxy subcontractors.

¶ 29 On April 17, 2013, the Galaxy subcontractors filed a motion to vacate and modify the orders of March 18, 2013. The motion to vacate argued that the court had misconstrued section 30 of the Act by treating the amount owed to Galaxy as a limitation on the owner and Ledcor's liability to the Galaxy subcontractors. The motion to vacate also asserted that the court had denied the Galaxy subcontractors due process by making "findings of disputed facts without holding an evidentiary hearing." Specifically, the motion asserted that there was a dispute as to the amount of funds that remained owing to Galaxy on its contract with Ledcor. In addition, the motion to vacate argued that the court had erred in holding that the owner and Ledcor's deposit of $143,122.38 with the clerk of the circuit court justified quashing the Galaxy subcontractors'

11

mechanics liens or dismissing their affirmative defenses and counterclaims against the owner and Ledcor.

¶ 30    On September 9, 2013, the trial court denied the Galaxy subcontractors' motion to vacate, other than to modify the March 18, 2013 orders to state that the Galaxy subcontractors' liens were "extinguished," rather than "void."  On October 8, 2013, the Galaxy subcontractors filed a notice of appeal from the two March 18, 2013 orders as well as from the order denying their motion to vacate.

¶ 31                                    ANALYSIS

¶ 32    We note that, with respect to appellate jurisdiction, the orders at issue did not operate as a final judgment with respect to all of the parties to the proceeding.  Specifically, although the trial court's March 18, 2013 orders determined that neither the owner or Ledcor owed any amount to Galaxy or the Galaxy subcontractors beyond the sum of $143,122.38, the court did *not* decide the Galaxy subcontractors' independent claims against Galaxy.  Those claims remained pending in the trial court.  However, Illinois Supreme Court Rule 304 provides that, in an action involving multiple claims for relief, "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."  Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006).  The trial court made such an express written finding that there was no just reason for delaying appeal from the March 18, 2013 orders, and the Galaxy subcontractors' notice of appeal was otherwise timely.  Accordingly, we have jurisdiction to decide this appeal.

¶ 33    The Galaxy subcontractors' appeal reiterates the arguments in their motion to vacate. First, they contend that the trial court erred in interpreting section 30's phrase "the amount due from the owner to the contractor," as applying to the amount owed by the owner to Galaxy (the

12

lien holders' immediate contractor), rather than the amount owed from the owner to Ledcor, the owner's general contractor. The Galaxy subcontractors separately assert that they were denied due process because the trial court did not conduct a full evidentiary hearing on disputed issues of material fact, particularly the amount owed to Galaxy from the owner. Further, the Galaxy subcontractors assert that the trial court erred in ordering that their mechanics liens would be extinguished, and that their affirmative defenses and counterclaims were subject to dismissal, upon the deposit of funds by the owner and Ledcor with the clerk of the court.

¶ 34     First, we examine the parties' arguments concerning the trial court's interpretation of the Act. We review such questions of statutory construction *de novo. Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009). "When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. [Citation.] The plain language of the statute is the most reliable indication of legislative intent. *** The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous. [Citation.] We will not depart from a statute's plain language by reading into it exceptions, limitations, or conditions that conflict with the legislative intent. [Citation.]" (Internal quotation marks omitted.) *Id.* at 389-91.

¶ 35     The parties' arguments implicate several related provisions of the Act, whose purpose, according to our supreme court, "is to permit a lien on premises when the owner has received a benefit, and the furnishing of labor and materials have increased the value or improved the condition of the property. [Citation.] In other words, the purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property." *Id.* at 391.

13

¶ 36    Although section 30 is the crux of the appeal, our consideration of that section is informed by the other provisions of the Act, which describe the duties and rights of owners, contractors, and subcontractors. We briefly review the relevant provisions.

¶ 37    Section 5 of the Act requires contractors to notify owners, through sworn statements, of amounts owed to any subcontractors; it also obligates the owners to require such statements before paying their contractors: "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner *** shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor *** a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, *** and of the amounts due or to become due to each." 770 ILCS 60/5 (West 2012).

¶ 38    Section 5 "serves the purpose of putting the owner on notice of any subcontractor claims." *Weather-Tite,* 233 Ill. 2d at 390. In addition, "requiring these sworn statements from contractors *** protect[s] owners from the potential claims of unknown subcontractors." *Bricks, Inc. v. C&F Developers, Inc.*, 361 Ill. App. 3d 157, 164 (2005). We have held that "an owner is entitled to rely upon a contractor's [section 5] affidavit in making payments and is protected as against unidentified subcontractors so long as he has no knowledge or notice that the affidavit contains false or incomplete information." *Id.*

¶ 39    Pursuant to section 21 of the Act, subcontractors may assert liens against the owner's property for the labor, services, and material they provide. Section 21 specifies that: "Subject to the provisions of Section 5, every mechanic, worker or other person who shall furnish any labor, services, material *** for the contractor, *** shall be known under this Act as a sub-contractor, and shall have a lien for the value thereof, *** on the same property as provided for the

14

contractor \*\*\* on the material, fixtures, apparatus or machinery furnished, and on the moneys or other considerations due or to become due from the owner under the original contract." 770 ILCS 60/21(a) (West 2012). Section 22 further provides that a *sub*-subcontractor may also enforce his lien "in the same manner as is herein provided for the enforcement of liens by sub-contractors." 770 ILCS 60/22 (West 2012).

¶ 40    Section 24 provides that subcontractors may "at any time after making his or her contract with the contractor" send to the owner a written notice of their claim and amounts due. 770 ILCS 60/24(a) (West 2012). Thus, section 24 permits subcontractors to directly notify an owner of amounts owed to them despite their lack of contractual privity with the owner.

¶ 41    In turn, section 27 imposes a duty on owners, upon receipt of notice of amounts due to a subcontractor, to "retain from any money due or to become due the contractor, an amount sufficient to pay all demands that are or will become due such sub-contractor" and to "pay over the same to the parties entitled thereto." 770 ILCS 60/27 (West 2012). Notably, however, section 27 specifies that "the owner shall not be held liable to any laborer and sub-contractor \*\*\* whose name is omitted from the statement provided for in Sections 5 and 22 of this Act, nor for any larger amount than the sum therein named as due such person (provided such omission is not made with the knowledge or collusion of the owner)." *Id.*

¶ 42    Our supreme court has summarized the operation of these provisions as follows:

"What is clear from our reading of the Act is that the legislature

intended the following orderly method of conducting construction

transactions to protect subcontractor claims: (1) the owner and

general contractor enter into a contract for the construction work;

(2) as the work is completed, the general contractor submits a

section 5 sworn affidavit that must list all subcontractors and the amount due, to become due, or advanced; (3) when the section 5 sworn affidavit lists an amount due or to become due a subcontractor, section 24 requires the owner retain sufficient funds to pay the subcontractor; and (4) section 27 requires the owner to make subcontractor payments upon receiving notice of a subcontractor claim pursuant to a section 5 sworn statement."

*Weather-Tite*, 233 Ill. 2d at 393.

¶ 43    In conjunction with the foregoing provisions of the Act, section 30 (which is directly at issue in this appeal) allows an owner or a lien holder to initiate a circuit court proceeding where "there are several liens under sections 21 and 22 of this Act upon the same premises, and the owner or any person having such a lien shall fear that there is not a sufficient amount coming to the contractor to pay all such liens."  770 ILCS 60/30 (West 2012). "The contractor and all persons having liens upon or who are interested in the premises" are to be made parties in such a proceeding.  *Id.*  Section 30 further provides:

"Upon the hearing the court shall find the amount due from the owner to the contractor, and the amount due to each of the persons having liens, and in case the amount found to be due to the contractor shall be insufficient to discharge all the liens in full, the amount so found in favor of the contractor shall be divided between the persons entitled to such liens pro rata *** in proportion to the amounts so found to be due them respectively.  If

the amount so found to be due to the contractor shall be sufficient

to pay the liens in full, the same shall be so ordered." *Id.*

¶ 44    The "amount due from the owner to the contractor" thus establishes the pool of funds that will apply toward satisfaction of the lien holders' claims, either in full or *pro rata*. The crux of the dispute in this appeal is the meaning of "the amount due from the owner to the contractor" where the lien holders, like the Galaxy subcontractors, are sub-subcontractors; that is, where the lien holders were not in contractual privity with either the owner or the owner's general contractor. The parties dispute whether the relevant "contractor" in the phrase "amount due from the owner to the contractor" in this scenario refers to the owner's general contractor, or, on the other hand, to the lien claimants' immediate contractor.

¶ 45    The Galaxy subcontractors insist that the relevant "contractor" is Ledcor, the owner's general contractor. Thus, they assert that under section 30, the court should have determined the amounts owed under the owner's contract with Ledcor for the overall construction project, which was asserted to be worth several times the amount of the Ledcor-Galaxy contract. The Galaxy subcontractors argue that the amount remaining due to Ledcor on that contract is the relevant pool of funds available to satisfy their lien claims.

¶ 46    On the other hand, the owner and Ledcor assert that section 30's phrase "the amount due from the owner to the contractor" should be construed to refer to the amount due to the Galaxy subcontractors' *immediate* contractor, Galaxy, not the owner's general contractor, Ledcor. As the owner, Ledcor, and Galaxy agree that the amount that remained due to Galaxy under the Galaxy-Ledcor contract was $143,122.38, the owner and Ledcor assert that the trial court properly found this was the "amount due from the owner to the contractor" under section 30, and that the owner and Ledcor could not be liable for more than this amount with respect to the Galaxy

17

subcontractors' liens. The owner and Ledcor urge that to hold them liable for any larger amount "would compel [the owner] to owe more under its contract with Ledcor than the amount specified and compel Ledcor to owe more than it agreed contractually with Galaxy for the work that the [Galaxy subcontractors] now seek to be paid for."

¶ 47    As noted by the trial court, there does not appear to be controlling precedent that has specifically addressed the interpretation of section 30's phrase "the amount due from the owner to the contractor" in the situation where the lien holders are sub-subcontractors.  That is, we have not previously addressed whether the pool of funds available to satisfy lien holders' claims under section 30 should be construed as the amount remaining due from the owner to its general contractor, or if the relevant amount in this situation is the amount that remains owed to the sub-subcontractors' immediate contractor.

¶ 48    However, in construing other provisions of the Act, our appellate court has held that a sub-subcontractor's potential recovery from the owner on a mechanic's lien is generally limited to the amount that remains due to the lien holder's immediate contractor.  See *Doors Acquisition, LLC v. Rockford Structures Construction Co.*, 2013 IL App (2d) 120052; *Bricks, Inc. v. C&F Developers, Inc.*, 361 Ill. App. 3d 157 (2005).  As set forth below, we find the facts and reasoning of those decisions persuasive in this case.

¶ 49    The relevant parties in *Bricks*, decided by the First District of our appellate court in 2005, included the owner of property at a construction site, the general contractor on the construction project, a subcontractor (G&B) hired to perform masonry work, and the plaintiff (Bricks), who supplied materials to G&B.  *Id.* at 159.  During the construction, the general contractor had submitted statements to the owner pursuant to section 5 of the Act that "identified G&B as a masonry subcontractor, but did not identify Bricks as a supplier to G&B."  *Id.*  Thus, the owner

lacked notice that amounts were owed to Bricks. After G&B failed to pay Bricks, Bricks filed a mechanics lien. *Id.* at 160. However, by the time the owner and general contractor received notice of Bricks' lien, "$260,000 of the $270,000 due on the masonry subcontract to G&B had been paid" by the owner and general contractor, "leaving $10,000 remaining due on the contract" to G&B. *Id.* at 159. The owner and general contractor moved for partial summary judgment, "seeking an order that their liability to Bricks was limited to $10,000, the unpaid balance owed to G&B as of the date of their notice of Bricks' lien." *Id.* at 160. The trial court granted the motion, finding that "Bricks' lien was limited to the $10,000 that remained due to G&B as shown on the sworn statements of the general contractor, C&F. *Id.*

¶ 50     On appeal, Bricks urged that its lien should not be limited to the $10,000 owed to G&B, its immediate contractor, especially as Bricks had complied with section 24 of the Act by submitting written notice of its claim to the owner and general contractor. *Id.* at 163. Nonetheless, the appellate court emphasized that "in addition to protecting the rights of those furnishing labor and materials, the Act also seeks to protect owners from the potential claims of subcontractors." *Id.* The court further noted that "[m]any cases have found that a secondary subcontractor seeking to enforce his mechanics' lien, even if in compliance with the notice requirements of section 24 of the Act, is limited to recovering only that amount which is owed to his immediate contractor at the time the notice of his lien is given. [Citations.]" *Id.*

¶ 51     The appellate court reasoned that "an owner is entitled to rely upon a contractor's affidavit in making payments and is protected as against unidentified subcontractors so long as he has no knowledge or notice that the affidavit contains false or incomplete information." *Id.* at 164. The *Bricks* court noted that the owner "received notice of Bricks' lien only after paying all but $10,000 to G&B (Bricks' immediate contractor), and Bricks presented no evidence showing

19

that [owner], or [general contractor] knew of the existence of Bricks as a subcontractor prior to that payment, [that] the omission of Bricks from G&B's sworn statements was with the knowledge or collusion of [owner], or that any payments were wrongfully made by [owner] after receiving notice from Bricks of its lien." *Id.* As a result, the appellate court concluded "that the trial court properly limited Bricks' recovery to the unpaid amount due to Bricks' immediate contractor as of the date Bricks served notice of its lien." *Id.* at 165. Although the court acknowledged "this result seems contrary to one of the Act's goals of protecting materialmen and suppliers," the court explained that the Act "seeks to balance the rights and duties of subcontractors, materialmen, and owners alike" and that "as between a materialman-subcontractor and an owner with no knowledge of the former's existence, the balance is struck in favor of the latter." *Id.*

¶ 52 In a more recent decision also involving a sub-subcontractor's mechanics lien, the Second District of our appellate court similarly held that the lien holder could not recover from a property owner more than the amount owed by the owner to the lien holder's *immediate* contractor. See *Doors Acquisition, LLC v. Rockford Structures Construction Co.*, 2013 IL App (2d) 120052. In *Doors*, the owner contracted with a general contractor, who retained a subcontractor (D&P) to supply drywall in the construction of a hotel. *Id.* ¶ 4. D&P, in turn, contracted with certain union members to perform work on the property, but failed to pay them certain wages and benefits. *Id.* ¶ 5. The union members filed a mechanics lien on the property. *Id.* ¶ 7. However, by the time the property owner received notice of the lien, D&P had already been fully paid, and the owner "was not aware that D&P had failed to make wage and benefit payments" to the union workers. *Id.*

¶ 53 The trial court concluded that "payment in full to D&P did not invalidate the union's mechanics lien" and ordered the owner to pay the union. *Id.* ¶ 2. On appeal, the owner argued that "because D&P had been paid in full when [the owner] received notice of the union's lien, the union could not recover an amount beyond what was owed to its immediate contractor." *Id.* ¶ 10. The union argued—just as the Galaxy subcontractors urge in this appeal—that "pursuant to the Act, the only limitation placed on a subcontractor mechanics lien is the contract price between the owner and the general contractor." *Id.*

¶ 54 The *Doors* court adopted *Bricks'* reasoning that "[t]he Act seeks to balance the rights of owners, contactors, and subcontractors; and thus, one purpose of a section 5 sworn statement is to protect owners from claims by unknown subcontractors." *Id.* ¶ 18 (citing *Bricks*, 361 Ill. App. 3d at 163-64). As in the *Bricks* case, the *Doors* court concluded that "the balance should be struck in favor of the owner when the owner properly relies on a section 5 sworn statement from a general contractor that a subcontractor has been paid and a lower-tier contractor is not listed, even if the lower-tier contractor later complies with the Act's requirements." *Id.* (citing *Bricks*, 361 Ill. App. 3d at 163-64). As the owner in *Doors* "did not receive notice of the union's lien until after he had received [the general contractor's] section 5 sworn statement reflecting that D&P had been paid in full," the Second District concluded that "as in *Bricks*, the union is limited to recovering what was owed to its immediate contractor." *Id.*

¶ 55 Although the *Doors* court recognized that "section 21 provides that a subcontractor shall have a lien for the value of services provided against the amount due or to become due from the owner under the original contract [citation], and that section 24 permits a subcontractor to serve notice of a lien upon an owner," the court reasoned that "in matters of statutory construction, we cannot allow formality to trump substance where the result would be contrary to the purposes for

which the statute was enacted and lead to consequences which the legislature could not have intended." (Internal quotation marks omitted.) *Id.* ¶ 19. The *Doors* court remarked: "We question whether the legislature could have intended that, when the owner pays a subcontractor for the value of the services the owner received, a lower-tier subcontractor can recover from the owner an amount beyond what the owner was required to pay the lower-tier subcontractor's immediate contractor." *Id.*

¶ 56 Although the *Bricks* and *Doors* decisions did not construe the section 30 provision at issue in this case, we find that their facts are analogous and their logic is persuasive. Just as the sub-subcontractors in those cases asserted liens for amounts due to them from their immediate contractors (who were subcontractors of the general contractor), the Galaxy subcontractors in this case were not paid amounts due to them from Galaxy (which was a subcontractor of Ledcor, the general contractor). In addition, just as in *Bricks* and *Doors*, the owner in this case did not have notice of the amounts owed until the Galaxy subcontractors served notice of their lien claims.

¶ 57 Because the owners in *Bricks* and *Doors* were not previously aware of the subcontractors' claims, their liability to the lien holders was limited "to the unpaid amount due to [the subcontractor's] immediate contractor as of the date [the subcontractor] served notice of its lien." *Bricks,* 361 Ill. App. 3d at 165. Likewise, in this case it is not disputed that the last section 5 statement provided to the owner by Ledcor did *not* disclose any amounts due to the Galaxy subcontractors, and that the owner only became aware of those claims after it received notice of the Galaxy subcontractors' mechanics liens. Moreover, it is not disputed that, after receipt of the Galaxy subcontractors' liens, the owner did not authorize any new payments to Galaxy. Thus, the owner complied with its obligations under the Act.

¶ 58    As illustrated by *Bricks* and *Doors*, where an owner has acted in good faith and in compliance with the Act, the balance is struck in favor of the owner so as not to hold the owner liable for amounts beyond what was contractually owed to the lien holder's immediate contractor.  In accord with the reasoning of those decisions, we agree that section 30's phrase "the amount due from the owner to the contractor" refers to the amount owed to the claimant's *immediate* contractor, when the liens at issue are asserted by sub-subcontractors that lacked privity with either the owner or the owner's general contractor.

¶ 59    Our interpretation of section 30 is consistent with other provisions of the Act supporting the premise that an owner who has otherwise complied with the Act in good faith should not be compelled to pay more than the contract price to satisfy mechanics liens. See *Brady Brick & Supply Co. v. Lotito*, 43 Ill. App. 3d 69, 72-73 (1976) ("Except under certain conditions created by the Act the subcontractor whose claims are unpaid may not recover from the original owner a sum which will make the total cost to the owner greater than that specified in the original contract between the owner and the original contactor.").  Specifically, although section 21(a) establishes that a subcontractor "shall have a lien for the value" of its labor "on the same property as provided for the [general] contractor," section 21(d) provides that "[i]n no case, except as hereinafter provided, shall the owner be compelled to pay a greater sum for *** the completion of such house, building or other improvement than the price or sum stipulated in said original contract or agreement, unless payment be made to the contractor *** in violation of the rights and interests of the persons intended to be benefited by this act."  770 ILCS 60/21(a), (d) (West 2012).  Likewise, section 27 provides that, although an owner notified of a subcontractor's lien must retain funds sufficient to pay that lien, "the owner shall not be held liable to any laborer and sub-contractor or other person whose name is omitted from the statement provided for in

23

Sections 5 and 22 of this Act, *nor for any larger amount than the sum therein named as due such person*." (Emphasis added.) 770 ILCS 60/27 (West 2012). These provisions illustrate the legislative intent that, when the owner has otherwise complied with the Act, the "balance should be struck in favor of the owner." *Doors*, 2013 IL App (2d) 120052, ¶ 18.

¶ 60 We note that the Galaxy subcontractors cite three decisions (each of which preceded *Bricks* and *Doors*) which held that a subcontractor's recovery from the owner was *not* limited by the amount owed to the immediate contractor. However, those cases are clearly distinguishable, as in each case, the owner had failed to comply with the Act. First, in *Brady Brick*, 43 Ill. App. 3d 69, the Second District of our court permitted a supplier of materials to a general contractor to foreclose a mechanics lien against the owner's property. The court recognized that generally, under the Act "the subcontractor *** may not recover from the original owner a sum which will make the total cost to the owner greater than that specified in the original contract." *Id.* at 72-73. However, the court noted an exception "if the owner makes any payments to the original contractor which are in violation of the rights of any subcontractor." *Id.* at 73. Under *Brady Brick*'s facts, the owner violated section 5 by making such a payment without requiring a sworn statement from its original contractor, and thus the payment was "wrongfully made." *Id.* "An owner who pays the original contractor without requiring the [section 5] statement cannot complain because he is compelled to pay more than the contract price." *Id.*

¶ 61 Likewise, in 1992, the Fourth District of this court found that a subcontractor held a valid mechanics lien against the owner's property, and that its recovery was not limited to the amount owed to its immediate contractor, because the owner had failed to require a section 5 sworn statement from its general contractor. See *A.Y. McDonald Manufacturing Co. v. State Farm Mutual Automobile Insurance Co.*, 225 Ill. App. 3d 851, 858-60 (1992). The court

indicated that the result would have been different had the owner complied with section 5, recognizing "an owner does have statutory protection that generally prevents the owner from being required by the Act to pay out to the general contractor and subcontractors more than the contract price." *Id.* at 859. The Galaxy subcontractors also cite *Struebing Construction Co. v. Golub-Lakeshore Place Corp.*, 281 Ill. App. 3d 689 (1996). In that case, after a subcontractor (Struebing) gave timely notice of its lien claim to the owner, the owner made payments to the general contractor which were "in violation of Struebing's rights and interests as a subcontractor and thus were wrongful." *Id.* at 694. As a result of the owner's disregard of the Act, "Struebing's claim was not limited to amounts owed to its immediate subcontractor." *Id.* at 694-95.

¶ 62 In contrast to those cases, there is no contention here that the owner violated the Act by failing to require a section 5 statement from its general contractor, or that the owner made wrongful payments to Galaxy after being notified of the amounts owed to the Galaxy subcontractors. Thus, there was no reason to depart from the general rule that an owner is protected from paying more than the contracted amount toward the claimants' mechanics liens.

¶ 63 In sum, we conclude that, under the facts of this case, the trial court correctly construed section 30's language that "the court shall find the amount due from the owner to the contractor" to refer to the amount due from the owner to the lien claimants' *immediate* contractor—in this case, the amount remaining owed to Galaxy. Thus, the court correctly determined that the outstanding amount owed on the contract between Ledcor and Galaxy ($143,122.38) limited the funds recoverable from the owner and Ledcor to satisfy the Galaxy subcontractors' liens.

¶ 64 Having determined that the trial court correctly interpreted section 30 of the Act, we turn to the remaining contentions of the Galaxy subcontractors on appeal. First, the Galaxy subcontractors assert that they were denied due process because the "trial court never took any

evidence, but nonetheless made findings of material, disputed facts, without notice, with no opportunity to be heard." They complain that the parties "raised material, disputed factual issues which the trial court ruled upon without any evidentiary hearing." However, the only disputed factual issue identified by the Galaxy subcontractors is the amount that was owed to Galaxy on its contract with Ledcor. That is, while the owner and Ledcor asserted that this amount was $143,122.38, the Galaxy subcontractors urged that a higher amount, $218,546.19, was owed to Galaxy. The Galaxy subcontractors claim this issue could only be resolved through "discovery and proof admitted in evidence."

¶ 65    This argument, however, ignores the fact that Galaxy *agreed* with the owner and Ledcor regarding the amounts owed to Galaxy, which dispensed with the need for an evidentiary hearing on that factual issue. Galaxy's answer to the section 30 complaint admitted the allegations that the amount remaining due was $126,178.30. Although the owner and Ledcor subsequently informed the court that, after taking into account an additional change order, the figure was $143,122.38, the record reflects that Galaxy's counsel also agreed with that adjusted amount.

¶ 66    We agree with the trial court that when the *parties to* the relevant contract have agreed as to the amount owed on the contract, there is no longer a triable issue of material fact as to that amount, even if a *non-party* contends otherwise. Thus, the trial court properly determined that Galaxy's agreement as to the amount it was owed on its contract with Ledcor dispensed with the need for an evidentiary hearing on that issue, notwithstanding the allegations of the Galaxy subcontractors—who were not parties to the relevant contract—that a higher amount was owed on the contract.

¶ 67    Next, we address the Galaxy subcontractors' assertion that it was error for the court to extinguish their mechanics lien after requiring the owner and Ledcor to deposit $143,122.38 with

the clerk of court. The Galaxy subcontractors argue that "[t]here was no motion pending to extinguish liens and dismiss pleading and [they] had no notice or opportunity to address and oppose such relief." The owner and Ledcor respond that it was appropriate to extinguish the liens because the deposited funds "replaced unliquidated liens against real property with cash that would be immediately available" upon the court's eventual "determination as to how much each claimant was entitled to recover."

¶ 68     The parties do not cite any legal authorities discussing specifically whether a trial court may extinguish mechanics liens upon the deposit of funds with the clerk of court. There are few if any cases discussing the issue under section 30, and the statutory language of section 30 does not speak to this question. The Galaxy subcontractors rely on the principle that "[o]nce the contractor has complied with the statutory prerequisites" to establish a lien, the Act "should be liberally construed in order to carry out its remedial purpose." *First Federal Savings & Loan Ass'n v. Connelly*, 97 Ill. 2d 242, 246 (1983). From this proposition, the Galaxy subcontractors argue that their liens must remain in place so long as statutory requirements are satisfied. In other words, they argue that the trial court lacks discretion to extinguish a lien, even if it has ordered the deposit of funds to satisfy the contractor's underlying claims.

¶ 69     In our view, however, it is consistent with the "liberal construction" of the Act to permit the trial court, in its equitable discretion, to require the deposit of funds and thereby extinguish the lien. There appears to be no reported decision discussing this question in the context of section 30. However, in construing a separate provision of the Act, the Second District of our court has held that, although "the creation of a mechanics lien is entirely governed by the Act," "equitable principles are relevant in crafting an appropriate remedy" and an abuse of discretion

standard applies in reviewing the remedy ordered by the trial court. See *Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 876-77 (2001).

¶ 70 *Westcon* concerned mechanics liens filed pursuant to section 23 of the Act, (770 ILCS 60/23 (West 1998)), which governs liens against public funds arising from work on public improvements. In that case, separate liens were asserted by two subcontractors who had worked on a sewer construction project for Lake County. *Westcon*, 319 Ill. App. 3d at 873. The county deposited with the clerk of court funds it had retained after receiving of notice of the two liens. *Id.* The trial court subsequently granted a motion by one of the subcontractors (Glenbrook) to release the deposited funds, after the court concluded that the other subcontractor (Westcon) had already received all amounts contractually due to it. *Id.* at 874. On appeal, Westcon contended that the trial court lacked authority to direct the release of the deposited funds to Glenbrook. *Id.* at 875.

¶ 71 The Second District concluded that an abuse of discretion standard applied, reasoning that the trial court's order directing the release of funds "was similar to a mandatory injunction" and "[t]he propriety of an injunction is reviewed under the abuse-of-discretion standard." *Id.* at 877. The *Westcon* court elaborated that "[o]nce a plaintiff has complied with the procedural requirements upon which a right to a lien is based, the Act should be liberally construed in order to accomplish its remedial purpose. [Citation.] Accordingly, once a lien exists, a court has discretion in shaping a remedy for claims brought under section 23." *Id.*

¶ 72 Although *Westcon* involved a different provision of the Act, its reasoning regarding the trial court's equitable discretion to craft a remedy is persuasive in this case. Thus, we likewise conclude that once the Galaxy subcontractors established their liens, the court had discretion to liberally construe the Act in shaping a remedy under section 30, and that an abuse of discretion

standard governs our review. We note that, as stated in *Westcon*, "[i]n fashioning a remedy, courts have broad discretion to grant the relief that equity requires. [Citation.] Relevant considerations include both what is fair and what is workable. [Citation.] Any prejudice inuring to a party must be taken into account. [Citation.]" *Id.* at 878.

¶ 73 Under the facts of this case, we cannot say that the trial court abused its discretion by holding that the Galaxy subcontractors' liens would be extinguished upon the owner and Ledcor's deposit of $143,122.38. The court ordered this relief only after determining that under section 30, this sum represented the maximum amount recoverable from the owner and Ledcor towards satisfaction of the Galaxy subcontractors' claims. The trial court reasonably determined that upon the deposit of those funds, the Galaxy subcontractors' claims against the owner and Ledcor were adequately secured, which in turn eliminated the need to retain the liens on the owner's property. Indeed, the trial court's order specified that each of the Galaxy subcontractors "ha[s] a lien upon the said $143,122.38 funds," which effectively replaced their mechanics liens.

¶ 74 Moreover, although the Galaxy subcontractors' claims against *Galaxy*, their immediate contractor, remained pending, those outstanding contract claims against Galaxy also did not preclude the trial court from extinguishing the mechanics liens. Independent of the mechanics liens, the Galaxy subcontractors could be made whole if they prevailed on their breach of contract claims against Galaxy, their immediate contractor, and so the extinguishment of their mechanics liens did not deprive them of a remedy. As the trial court had already determined the maximum amount of liability by the owner and general contractor under section 30, and ordered that $143,122.38 amount to be deposited, there was no need to maintain the mechanics liens on the property in order to secure the independent breach of contract claims by the subcontractors

against Galaxy. Accordingly, we cannot say that the trial court abused its discretion or prejudiced the Galaxy subcontractors in ordering the extinguishment of their mechanics liens.

¶ 75 Next, we address the Galaxy subcontractors' assertion that the trial court erred in dismissing their three affirmative defenses to the section 30 complaint, as well as their counterclaims for foreclosure of their liens and for *quantum meruit.* We first conclude that dismissal of the affirmative defenses was appropriate.

¶ 76 With respect to the first affirmative defense, the pleading was flawed as it relied upon an inapplicable statutory provision. That affirmative defense pleaded that Galaxy submitted various payment applications to Ledcor which reflected work by the Galaxy subcontractors and that "[p]ursuant to the Contractor Prompt Payment Act, 815 ILCS 603/1 *et seq.*, particularly [section] 10, the payment applications were deemed approved 25 days after they were submitted." The Galaxy subcontractors' first affirmative defense thus claims that "[f]ull payment for the [Galaxy subcontractors'] work performed and approved is past due."

¶ 77 Although section 10(1) of the Contractor Prompt Payment Act provides that a payment application from a "contractor" "shall be deemed approved 25 days after the owner receives it" unless the owner provides a written statement to the contrary (see 815 ILCS 603/10(1) (West 2012)), a different provision applies to *subcontractors*. In particular, section 10(2) provides:

> "If a subcontractor has performed in accordance with *** his or
> her contract with the contractor or subcontractor *and the work has
> been accepted by the owner, the owner's agent, or the contractor*,
> the contractor shall pay to his or her subcontractor and the
> subcontractor shall pay to his or her subcontractor, within 15
> calendar days of the contractor's receipt from the owner *** of

each period payment *** the full amount received for the work of the subcontractor." (Emphasis added.) 815 ILCS 603/10(2) (West 2012).

¶ 78    That is, contrary to the pleading of the first affirmative defense, approval of the Galaxy subcontractors' work did not occur merely by the passage of 25 days, as would be the case with contractors under section 10(1) of the Contractor Prompt Payment Act.    Rather, as *subcontractors*, the Galaxy subcontractors would be entitled to payment pursuant to section 10(2) only after their "work has been accepted by the owner, the owner's agent, or the contractor." *Id.*  This was clearly not the case with respect to the work that formed the basis for the Galaxy subcontractors' liens; that is, neither the owner nor Ledcor approved or accepted the Galaxy subcontractors' work for which they claimed payment.  To the contrary, the owner and Ledcor first learned of the relevant work when they were served with the Galaxy subcontractors' lien notices.  As the work by the Galaxy subcontractors was not "accepted" by the owner or Ledcor, the first affirmative defense lacked merit.

¶ 79    The Galaxy subcontractors' second affirmative defense, unclean hands, was also properly dismissed, as it was rendered moot by the court's finding of the amount owed to Galaxy under the Ledcor-Galaxy contract.  Specifically, the unclean hands defense alleged that Ledcor and Galaxy created false change orders in order to misrepresent the amount of the contract and understate the amount remaining due on the contract.  However, as discussed above, the actual amount owing on the Galaxy-Ledcor contract was properly determined to be $143,122.38, based on Galaxy's agreement with the owner and Ledcor that this was the amount remaining owed on its contract. Thus, the Galaxy subcontractors' attempt to dispute this amount through an "unclean hands" defense lacked merit.

¶ 80    The third affirmative defense was also properly dismissed, as it relied upon an improper interpretation of the Act that is inconsistent with our foregoing analysis of section 30. That affirmative defense alleged that, after the Galaxy subcontractors served notice of their mechanics liens, the owner "was on notice to withhold sufficient funds from Ledcor to pay the [Galaxy subcontractors'] claims in accord with the [Act], particularly [sections] 27 and 30," and thus the owner should pay the Galaxy subcontractors' claims in full. Thus, the third affirmative defense suggests that, upon notice of the Galaxy subcontractors' mechanics liens, the owner was required to cease payment to *any* of its contractors on the project—not just to Galaxy, the claimants' immediate contractor. This affirmative defense is unsustainable in light of our conclusion, discussed above, that the owner fulfilled its duties under the Act by withholding any payments to Galaxy after receipt of the Galaxy subcontractors' lien notices, as well as our conclusion that the owner and Ledcor's liability to the Galaxy subcontractors under section 30 was limited to the amount that was owed to Galaxy, the lien holders' immediate contractor.

¶ 81    Finally, we do not find error in the dismissal of the counts of the Galaxy subcontractors' counterclaim that sought foreclosure of their mechanics liens, as well as the dismissal of the counts of *quantum meruit* against the owner and Ledcor. The court's order specified that it dismissed these counts "because [the owner] will be depositing the sum of $143,122.38 with the Clerk of the Court." As discussed above with respect to the trial court's order extinguishing the mechanics liens, we cannot say that the court abused its discretion in concluding that, since $143,122.38 was the limit of the owner and Ledcor's liability on the Galaxy subcontractors' liens, the deposit of that amount replaced the need to retain those liens. Thus, the dismissal of the counts seeking foreclosure of those liens was appropriate. Similarly, as the counterclaim's counts for *quantum meruit* were based on the very same work that was the basis for their liens—

which were satisfied by the deposit of $143,122.38—the *quantum meruit* claims were duplicative and properly dismissed.

¶ 82    Notably, the trial court did *not* dismiss the breach of contract claims asserted in the Galaxy subcontractors' counterclaim against Galaxy.  In fact, the dismissal order is explicit that it is a final judgment *as to the owner and Ledcor*, but not as to the Galaxy subcontractors' causes of action against Galaxy.  Thus, as stated by the trial court, the Galaxy subcontractors may pursue common law breach of contract claims against Galaxy notwithstanding our agreement with the trial court's conclusion that they may recover no more than $143,122.38 from the owner and Ledcor pursuant to section 30 of the Act.

¶ 83    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 84    Affirmed.